IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **FORD MOTOR COMPANY**, a Delaware corporation, and **FORD GLOBAL TECHNOLOGIES, LLC**, a Delaware Limited Liability Company,<br><br>            Plaintiffs,<br><br>v.<br><br>**AUTEL US INC.**, a New York corporation, and **AUTEL INTELLIGENT TECHNOLOGY CO., LTD**, a Chinese corporation,<br><br>            Defendants. | Civil Action No. 2:14cv13760<br><br>Honorable |

GREGORY D. PHILLIPS
SCOTT R. RYTHER
JARED L. CHERRY (*Pro Hac Vice Pending*)
**PHILLIPS RYTHER & WINCHESTER**
600 East 124 South
Salt Lake City, Utah 84102

**PHILLIPS RYTHER & WINCHESTER**
3300 Washtenaw Avenue, Suite 280
Ann Arbor, Michigan 48104
Tel:     (801) 935-4935
Fax:    (801) 935-4936

Attorneys for Plaintiff

## COMPLAINT

Plaintiffs Ford Motor Company ("Ford") and Ford Global Technologies, LLC ("FGTL") (collectively "Ford") for their claims against defendants Autel US Inc. and Autel Intelligent Technology Co., LTD (collectively "Autel") alleges as follows:

## NATURE AND SUBSTANCE OF THE ACTION

1. Ford files this action against Autel for copyright infringement, trademark infringement, false designation of origin, misappropriation of trade secrets and confidential business information, common law unjust enrichment, and unfair and deceptive trade practices in violation of Michigan statutory and common law based upon Autel's hacking of Ford's IDS software to gain access to a proprietary database of diagnostic information, and Autel's subsequent copying of Ford's proprietary database onto Autel's diagnostic tools. In addition, Autel also uses the world-famous FORD OVAL® trademark on its products. Ford seeks damages, statutory damages, injunctive relief, Ford's attorneys' fees and costs, and other appropriate relief.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over the claims relating to the Copyright Act (17 U.S.C. §§ 101, 501) and the Lanham Act (15 U.S.C. §§1125 et. seq.) pursuant to 28 U.S.C. § 1331 (federal subject matter jurisdiction) and 28 U.S.C. §1338(a) (any act of Congress relating to copyrights, patents and trademarks). This Court has subject matter jurisdiction over the related state law claims under 28 U.S.C. § 1367 (action asserting a state claim of unfair competition joined with a substantial and related federal claim under the patent, copyright or trademark laws).

3. This action arises out of wrongful acts committed by Autel that are intentionally targeted at Ford in this District that subject Autel to personal jurisdiction here. Moreover, Autel markets, sells, furnishes, and supports the accused infringing products throughout the United

States, including in the State of Michigan to Michigan residents, a fact which has already been established in a written opinion from this Court in *Service Solutions U.S., LLC, v. Autel US, Inc., et al.*, Case No. 4:13-cv-10534-TGB-LJM, Dkt. No. 31 (denying motion to dismiss Autel Intelligent Technology Co., Ltd. based on alleged lack of personal jurisdiction).Venue is proper in this judicial district under 28 U.S.C. § 1391.

## THE PARTIES

4. Ford Motor Company is a Delaware corporation with its principal place of business in Dearborn, Michigan.

5. FGTL is a Delaware limited liability company with its principal place of business in Dearborn, Michigan, and is a wholly owned subsidiary of Ford Motor Company.

6. Defendant Autel US is a New York corporation with its principal place of business located at 116 Spring Road, Huntington, New York.

7. Defendant Autel Intelligent Technology Co., Ltd is a Chinese corporation having a principal place of business at East Gate, 1st Floor, SZICC Bldg, Chaguang Road 1089, Xili, Nanshan, Shenzhen 518055, China and having an office in the United States at 116 Spring Road, Huntington, New York.

## FACTS COMMON TO ALL CLAIMS

8. Ford is one of the world's largest producers of cars and trucks.

9. Ford was incorporated in Delaware in 1919, after acquiring the business of a Michigan company, also known as Ford Motor Company, which was incorporated in 1903 to produce and sell automobiles designed and engineered by Henry Ford.  In addition to producing, leasing, and selling cars and trucks, Ford also provides retail customers with a wide range of

after-sale vehicle services and products through its dealer networks and other channels, including automotive repair.

10. FORD® and the FORD OVAL® are some of the most well-known and highly regarded trademarks in the world. Ford sold its first automobile at least as early as 1903, and has sold automobiles and many other goods and services under the world-famous FORD® and FORD OVAL® trademarks for many decades.

11. Ford holds numerous registrations for FORD® and the FORD OVAL® in the United States and worldwide. Ford's registrations for FORD® and the FORD OVAL® are valid, unrevoked, subsisting, and incontestable, and constitute *prima facie* evidence of Ford's exclusive ownership of these trademarks. FORD® and the FORD OVAL® are referred to hereinafter collectively as the "Ford Marks."

12. Ford has spent hundreds of millions of dollars and has expended significant effort in advertising, promoting, and developing the Ford Marks throughout the world. As a result of such advertising and expenditures, Ford has established considerable goodwill in the Ford Marks. The Ford Marks have become widely known and recognized throughout the world as symbols of high quality automotive goods and services. The Ford Marks are world-famous and distinctive, and have become associated by the consuming public exclusively with Ford. The Ford Marks are an invaluable asset of substantial and inestimable worth to Ford.

13. Ford has developed a diagnostic tool referred to as the Ford Integrated Diagnostic System (the "IDS System") for the purpose of diagnosing and facilitating the service and repair of a wide variety of issues.

14. The IDS system includes hardware and software components. The hardware components include the Vehicle Communication Module ("VCM"), the Vehicle Communication Module II ("VCM II"), and the Vehicle Measurement Module ("VMM") (collectively, the "Diagnostic Tools") and a computer system using the Microsoft® Windows® operating system.

15. The Diagnostic Tools connect to a 16-pin diagnostic link in Ford vehicles, which in turn, is in communication with an on-board computer system in the vehicle.

16. A software program (the "IDS Software") operates on the computer and receives information from the Diagnostic Tools. The IDS Software also includes technical information relating to the diagnosis and repair based on data received from the Diagnostic Tools.

17. The IDS Software includes various compilations of data, such as databases, tables, and the like to aid in the operation of the IDS System.

18. Certain of the compilations of data within the IDS System are made generally available pursuant to applicable federal statutes. Other compilations of data within the IDS system, however, are not made publically available and constitute trade secrets used by Ford and its network of authorized dealers and repair facilities.

19. One such compilation of data is referred to as the "FFData" file.

20. Ford utilizes a variety of techniques to protect trade secret information included in the IDS System, including the FFData file, including use of encryption technology and obfuscation.

21. Upon information and belief, Ford alleges that Autel created a program titled PARSEALL.EXE, which is designed to obtain unauthorized access to the FFData file compilations of data within the IDS system.

22. Upon information and belief, Autel used the PARSEALL.EXE tool to extract the FFData file and copied the FFData file onto various products sold by Autel.

23. Upon information and belief, Autel's DS708 tool includes an unlawfully obtained copy of the FFData file.

24. Included within thousands of data entries in the FFData file are numerous test entries or fictitious. The test entries or fictitious entries include the terms "test" and "dummy."

25. The identical "test" entries may be displayed via the IDS System and in Autel's DS708 tool. Screen captures from Autel's DS708 product and the Ford IDS Software showing an entry for "test" part number "test-12A650-PN".





26. As a result of Autel's misappropriation and use of the FFData file, Autel's DS708 tool responds in the same manner as Ford's IDS software when the "test" or "dummy" data is entered. The presence of the "test" or "dummy" data conclusively demonstrates that Autel copied Ford's proprietary database because the "test" or "dummy" does not correspond to any actual vehicles or parts.

27. A detailed technical analysis of data files stored on Autel's DS708 device shows that the FFData file is duplicated on Autel's DS708 device.

28. Ford has obtained a copyright registration from the United States Copyright Office for data from the FFData. A true and correct copy of the Certificate of Registration is attached hereto as Exhibit A.

29. In addition to misappropriating and duplicating Ford's proprietary FFData file, Autel also uses the FORD OVAL® trademark on its products without authorization or a license from Ford, as shown in the following photograph.

7



30. Ford has registered the FORD OVAL® trademark specifically in the field of Automobile repair and maintenance services. A copy of the trademark registration certificate for trademark registration no. 3,657,597 is attached hereto as Exhibit B.

| Mark | Reg. No. | Goods and Services |
|---|---|---|
|  | 3,657,597 | Automobile repair and maintenance services. |

**FIRST CLAIM FOR RELIEF**
(Copyright Infringement under 17 U.S.C. §§ 101 et seq.)

31. The allegations set forth above are incorporated herein by this reference.

8

32. Autel has intentionally and willfully copied Ford's proprietary database and such copying infringes upon Ford's copyright.

33. Unless Autel is enjoined, Autel will continue to infringe Ford's copyright.

34. Autel's copying has caused Ford to lose substantial revenues.

35. As a direct result of such copyright infringement, Ford has sustained and will continue to sustain, substantial injury, loss, and damages in an amount exceeding $1,000,000.00 and as proven at trial.

36. Ford is entitled to a permanent injunction restraining Autel, its officers, directors, agents, employees, representatives and all persons acting in concert with them from engaging in further acts of copyright infringement.

37. Ford is further entitled to recover from Autel the gains, profits and advantages Autel has obtained as a result of its acts of copyright infringement. Ford is at present unable to ascertain the full extent of the gains, profits and advantages Autel has obtained by reason of its acts of copyright infringement, but Ford is informed and believes, and on that basis alleges, that Autel obtained such gains, profits and advantages in an amount exceeding $1,000,000.00.

## SECOND CLAIM FOR RELIEF
(Circumvention of Copyright Protection System, 17 U.S.C. § 1201)

38. The allegations set forth above are incorporated herein by this reference.

39. At all times pertinent hereto, the FFData file has been protected by technological measures to effectively control access to the data contained in the file.

40. The program titled PARSEALL.EXE, is primarily designed to decrypt the FFData, or otherwise to avoid, bypass, remove, deactivate, or impair the technological measures implement by Ford to control access to the data in the FFData file.

41. The program PARSEALL.EXE has limited commercially significant purpose or use other than to circumvent the technological measures implemented by Ford that effectively control access to the data in the FFData file.

42. On information and belief, Ford alleges that Autel, without authorization from Ford, circumvented the technological measures used by Ford to protect the data contained in the FFData file and gained access to the data contained in the FFData file.

43. On information and belief, after circumventing the technological measures used by Ford and gaining access to the data contained in the FFData file, Autel used the data in connection with Autel's diagnostic systems for automobiles.

44. Ford has been damaged by Autel's circumvention of the technological measures that controlled access to the copyrighted work of Ford contained in the FFData file in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**
(Federal Trademark Infringement under 15 U.S.C. § 1114)

45. The allegations set forth above are incorporated herein by this reference.

46. The Ford Marks are inherently distinctive, are arbitrary and fanciful, and have acquired secondary meaning. The public associates the Ford Marks exclusively with Ford and Ford's vehicles, products, and services. This is a result of the inherent distinctiveness of the Ford Marks and of distinctiveness acquired through extensive advertising, sales, and use in

commerce throughout the United States and beyond in connection with products and services bearing or using the Ford Marks.

47. Despite Ford's well established rights in the Ford Marks, Autel uses and continues to use, without Ford's authorization, the Ford Marks in connection with the advertisement, promotion, and sale of Autel's products and services.

48. Autel's actions constitute willful infringement of Ford's exclusive rights in the Ford Marks in violation of 15 U.S.C. § 1114.

49. Autel's misappropriation of the Ford Marks or colorable imitations thereof, has been, and continues to be done, with the intent to cause confusion, mistake, and to deceive consumers concerning the source and/or sponsorship of Autel's products and services. Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

50. As a direct and proximate result of Autel's conduct, Ford has suffered irreparable harm to the Ford Marks. Unless Autel is restrained from further infringement of the Ford Marks, Ford will continue to be irreparably harmed.

51. Ford has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Autel's acts are allowed to continue, and is thus entitled to both a preliminary and permanent injunction.

52. As a direct and proximate result of Autel's conduct, Ford is entitled to damages, treble damages, statutory damages, the equitable remedy of an accounting for, a disgorgement, of all revenues and/or profits wrongfully derived by Autel from its infringement of the Ford Marks, and Ford's attorneys' fees and costs pursuant to 15 U.S.C. § 1117.

## THIRD CLAIM FOR RELIEF
(False Designation of Origin under 15 U.S.C. § 1125(a))

53. The allegations set forth above are incorporated herein by this reference.

54. Autel has used and is continuing to use in commerce false and misleading designations of origin concerning Autel's products and services and Ford's products and services

55. Autel's false designations of origin have caused actual confusion and will continue to cause actual or likely confusion regarding the affiliation, connection, or association of Autel's products and services with Ford or as to the origin, sponsorship, or approval of Autel's products and services.

56. Autel has caused and will continue to cause its false and misleading designations of origin and descriptions of fact to enter interstate commerce.

57. Ford has been or is likely to be injured as a result of the false and misleading designations of origin and descriptions of fact, either by direct diversion of sales from itself to Autel or by a lessening of the goodwill associated with Ford's products and services.

58. Autel's acts constitute false designations of the origin and/or sponsorship in violation of Section 43(a) of the Lanham Act, as amended, 15 U.S.C. § 1125(a).

59. By reason of Autel's actions, Ford has suffered irreparable harm to the Ford Marks.  Unless Autel is restrained from its actions, Ford will continue to be irreparably harmed.

60. Ford has no remedy at law that will compensate for the continued and irreparable harm that will be caused if Autel's acts are allowed to continue, and is thus entitled to both a preliminary and permanent injunction.

61. As a direct and proximate result of Autel's conduct, Ford is entitled to damages, treble damages, statutory damages, and the equitable remedy of an accounting for, a

disgorgement of, all revenues and/or profits wrongfully derived by Autel from its false designations of origins, and Ford's attorneys' fees and costs pursuant to 15 U.S.C. § 1117.

## FOURTH CLAIM FOR RELIEF
(Unfair Competition under Michigan Law)

62. The allegations set forth above are incorporated herein by this reference.

63. Autel simulated the Ford Marks and substituted Autel's products and services for those of Ford, thereby deceiving and misleading the public.

64. Autel's actions as described above constitute unfair competition as a matter of Michigan common law.

65. As a result of Autel's conduct, Ford will continue to suffer damage to Ford's reputation and loss of business because of consumer confusion as to the origin, sponsorship, approval, nature, characteristics, or qualities of Autel's products and services.

66. Ford has been, and absent injunctive relief will continue to be, irreparably harmed by Autel's action.

67. Ford has no adequate remedy at law for Autel's unfair competition.

68. Ford is entitled to damages in an amount to be proven at trial, as well as Ford's attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF
(Violation of Michigan Uniform Trade Practices Act, M.C.L. § 445.903)

69. The allegations set forth above are incorporated herein by this reference.

70. Autel's above-described acts constitute unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce, in violation of Michigan's Uniform Trade Practices Act, M.C.L. § 445.903, including, but not limited to:

    a. Causing a probability of confusion or misunderstanding as to the source, sponsorship, or approval of Autel's products and services;

    b. Using deceptive representations in connection with Autel's products or services;

    c. Representing that Autel's products or services have sponsorship, approval, or characteristics they do not have, including Ford's sponsorship or approval;

    d. Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction;

    e. Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

71. Ford will continue to suffer damage as a result of Autel's unfair, unconscionable, or deceptive methods, acts, or practices.

72. Ford has been, and absent injunctive relief will continue to be, irreparably harmed by Autel's actions.

73. Ford has no adequate remedy at law for Autel's violations of the Michigan Uniform Trade Practices Act.

74. Ford is entitled to damages in an amount to be proven at trial as well as Ford's attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF
(Misappropriation of Trade Secrets)

75. The allegations set forth above are incorporated herein by this reference.

76. Autel has acquired certain trade secrets belonging to Ford.

77. Autel knew, or had reason to know that the trade secrets were acquired by improper means.

78. Autel has knowingly and intentionally used Ford's trade secrets without Ford's permission.

79. Autel's actions constituted misappropriation of Ford's trade secrets and should be enjoined under M.C.L. § 445.1903(1).

80. Ford has been, and absent injunctive relief will continue to be, irreparably harmed by Autel's actions.

81. Ford has no adequate remedy at law for Autel's violations of Michigan Law.

82. Ford is entitled to damages in an amount to be proven at trial as well as Ford's attorneys' fees and costs pursuant to M.C.L. § 445.1904.

83. Ford is entitled to an order from this Court preserving Ford's trade secrets pursuant to M.C.L. § 445.1906.

## **SIXTH CLAIM FOR RELIEF**
(Unjust Enrichment)

84. The allegations set forth above are incorporated herein by this reference.

85. By wrongfully acquiring Ford's trade secrets, by misappropriating them for Autel's own use, and by the related wrongdoing, Autel has received a benefit from Ford.

86. Autel has wrongfully benefited from the development and sale of its competing product.

87. Autel has not compensated Ford for the benefit that Autel has received from Ford.

88. Under the circumstances, it would be inequitable for Autel to accept or retain the benefit conferred upon Autel without paying Ford the value of the benefit conferred.

89. Ford is entitled to receive the value of the benefit conferred upon Autel and entitled to the profits of Autel resulting therefrom.

WHEREFORE, Ford prays for judgment against Autel as follows:

1.  Under all claims for relief, that a preliminary and permanent injunction be issued enjoining Autel, its employees, agents, successors and assigns, and all those in active concert and participation with them, and each of them who receives notice directly or otherwise of such injunctions, from:

(a)  further infringing Ford's copyright, or printing, publishing, producing, distributing, circulating, selling, marketing, offer for sale, advertising, promoting, displaying, or otherwise disposing of any products not authorized by Ford bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of Ford's copyright;

(b)  imitating, copying, or making unauthorized use of the Ford Marks, including but not limited to using the name or marks FORD® and the FORD OVAL®, or any confusingly similar variations thereof, in any manner in the United States;

(c)  importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting, or displaying in the United States any service or product using any simulation, reproduction, counterfeit, copy, or colorable imitation of any or all of the Ford Marks;

(d)  using in the United States any simulation, reproduction, counterfeit, copy, or colorable imitation of the Ford Marks, or any confusingly similar variations thereof, in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any product or service;

(e)  using in the United States any false designation of origin or false description (including, without limitation, any letters or symbols constituting the Ford Marks), or performing

any act, which can, or is likely to, lead members of the trade or public to believe that any service or product manufactured, distributed, or sold by Autel is in any manner associated or connected with Ford, or is sold, manufactured, licensed, sponsored, approved, or authorized by Ford;

  (f)  transferring, consigning, selling, shipping, or otherwise moving in the United States any goods, packaging, or other materials in Autel's possession, custody, or control bearing a design or mark substantially identical to any or all of the Ford Marks or violating Ford's copyright;

  (g)  engaging in any false advertising or other activity in the United States constituting unfair competition with Ford with respect to the Ford Marks or constituting an infringement of the Ford Marks, or of Ford's rights in, or to use or exploit, the Ford Marks;

  (h)  instructing, assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (g) above.

  2.  For an order directing that Autel recall and deliver for destruction all products, labels, tags, signs, prints, packages, videos, advertisements, and other materials in its possession or under its control, bearing or using the Ford Marks or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, pursuant to 15 U.S.C. § 1118.

  3.  For an order directing Autel to deliver for destruction all unauthorized products, labels, signs, transparencies, electronic files, photographs, images, and advertisements in Autel's possession or under Autel's control bearing Ford's copyrighted work or any simulation, reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, programs, or other means of making the same.

4. For an order directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any service or product manufactured, sold, or otherwise circulated or promoted by Autel is authorized by Ford or related in any way to Ford's products or services.

5. For an order requiring Autel to pay Ford such damages as Ford has sustained as a consequence of Autel's infringement of Ford's copyright and to account for all gains, profits, and advantages derived by Autel by the infringement of Ford's copyright or as an alternative to recovering actual damages and any additional profits under the Copyright Act, ordering Autel to pay Ford the statutory damages thereunder for Ford's copyrighted work infringed by Autel.

6. For an order awarding Ford for Ford's copyrighted works infringed by Autel and increased award of statutory damages for willful infringement pursuant to 17 U.S.C. § 504.

7. For an order that Ford recover the costs of this action together with reasonable attorneys' fees and investigators' fees and pre-judgment interest pursuant to 17 U.S.C. § 505.

8. For an order from this Court preserving Ford's trade secrets pursuant to M.C.L. § 445.1906 and enjoining the misappropriation of Ford's trade secrets pursuant to M.C.L. § 445.1903(1).

9. For an order directing that Autel file with the Court and serve upon Ford's counsel within thirty (30) days after entry of such judgment, a report in writing under oath, setting forth in detail the manner and form in which Autel has complied with the above.

10. For an order requiring Autel to file with the Court and provide to Ford an equitable accounting and disgorgement of all revenues and/or profits wrongfully realized by Autel.

11. For an award of Ford's costs and disbursements incurred in this action, including Ford's reasonable attorney's fees, pursuant to 15 U.S.C. § 1117 and Michigan law, including M.C.L. § 445.911(2).

12. For an award of actual damages pursuant to 15 U.S.C. § 1117, M.C.L. § 445.911(2), and M.C.L. § 445.1904.

13. For an award of Ford's damages trebled or, alternatively, an award of Autel's wrongful profits from the United States trebled, whichever is greater, plus Ford's costs and attorney's fees, pursuant to 15 U.S.C. § 1117.

14. For an award of interest, including pre-judgment interest, on the foregoing sums.

15. For an order directing that this court retain jurisdiction of this action for the purpose of enabling Ford to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith, and for the punishment of any violations thereof.

16. For such other and further relief as the Court may deem just and proper.

Dated: September 29th, 2014

        Respectfully submitted,

        GREGORY D. PHILLIPS
        SCOTT R. RYTHER
        JARED L. CHERRY
        **PHILLIPS RYTHER & WINCHESTER**
        124 South 600 East
        Salt Lake City, Utah 84102
        Tel:   (801) 935-4935; Fax: (801) 935-4936

        By:   /s/ Gregory D. Phillips
            *Attorneys for Plaintiff*