# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

FORD MOTOR COMPANY, et al.,

      Plaintiffs,

v.

                              Case No. 2:14-cv-13760

AUTEL U.S. INC. and AUTEL
INTELLIGENT TECHNOLOGY        Judge Terrence G. Berg
CO., LTD.,

      Defendants.
_____/

## <u>DEFENDANTS' MOTION TO DISMISS</u>

Defendants Autel U.S. Inc. ("Autel.US") and Autel Intelligent Technology Co., Ltd. ("Autel ITC") (collectively, "Autel"), through counsel, respectfully move for dismissal of the Complaint filed by Plaintiffs Ford Motor Company and Ford Global Technologies, LLC ("Ford"). The basis of this Motion is that all counts in the Complaint fail to state a claim on which relief can be granted and, in addition, personal jurisdiction is lacking as respects Autel ITC. This Motion is supported by law and analysis set forth in the accompanying Brief.

Counsel for Autel contacted counsel for Ford on January 28, 2015 requesting concurrence in the relief sought with this motion, and concurrence has not been reached.

Respectfully submitted,

**KERR, RUSSELL AND WEBER, PLC**

By: /s/Fred K. Herrmann
     Fred K. Herrmann (P49519)
Detroit Center, Suite 2500
500 Woodward Avenue
Detroit, Michigan 48226
(313) 961-0200
(313) 961-0388 (Facsimile)
fherrmann@kerr-russell.com


**DRINKER BIDDLE & REATH LLP**

Keith A. Walter
Zhun Lu
Thatcher Rahmeier
222 Delaware Ave., Ste. 1410
Wilmington, DE 19801-1621
(302) 467-4200
(302) 467-4201 (Facsimile)
keith.walter@dbr.com
zhun.lu@dbr.com
thatcher.rahmeier@dbr.com

Dated: January 30, 2015

*Attorneys for Defendants Autel U.S. Inc. and*
*Autel Intelligent Technology Co., Ltd.*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

FORD MOTOR COMPANY, et al.,

     Plaintiffs,

v.

                            Case No. 2:14-cv-13760

AUTEL U.S. INC. and AUTEL
INTELLIGENT TECHNOLOGY        Judge Terrence G. Berg
CO., LTD.,

     Defendants.

_____/

## BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED.................................................v

PRELIMINARY STATEMENT ........................................................1

FACTUAL ALLEGATIONS ............................................................3

    A.    Copyright and Trade Secret Allegations ................................3

    B.    Trademark Allegations ........................................................5

    C.    Facts Regarding Personal Jurisdictions.................................7

STANDARD OF REVIEW ..............................................................7

    A.    Legal Standard Under Rule 12(b)(6)....................................7

    B.    Legal Standard Under Rule 12(b)(2).....................................8

ARGUMENT .................................................................................8

    I.    The Copyright Claims Are Not Plausible on Their Face and Should Be Dismissed. ..........................................................8

    A.    The Copyright Infringement Claim Should Be Dismissed. ..................9

    B.    The Circumvention of Copyright Protection Claim Merits Dismissal. ..................................................................11

    II.    The Federal Trademark Claims Should be Dismissed........................15

    III.    The Michigan State Law Claims Are Not Plausible on Their Face and Should Be Dismissed. ...........................................19

    A.    The Trade Secret Claims Should be Dismissed. ..................................19

    B.    The Trademark-Related State Law Claims Also Warrant Dismissal. ..................................................................22

    IV.    Personal Jurisdiction is Lacking as to Defendant Autel ITC..............23

CONCLUSION ...........................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................7, 15, 18

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................7, 8, 21

*Chamberlain Grp., Inc. v. Skylink Techs., Inc.*,
381 F.3d 1178 (Fed. Cir. 2004) .........................................................12

*CMI v. Intermet*,
649 N.W.2d 808 (Mich. App. 2002)...................................................21

*Compuware Corp. v International Business Machines*,
2003 U.S. Dist. LEXIS 24894 (E.D. Mich. 2003)..............................21

*Curcio Webb LLC v. Nat'l Benefit Programs Agency, Inc.*,
79 U.S.P.Q.2D 1119, 2006 U.S. Dist. LEXIS 394 (S.D. Ohio 2006)...............11

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*,
109 F.3d 275 (6th Cir. 1997) .............................................................16

*Dassault Systemes, S.A. v. Childress*,
No. 09-10534, 2014 WL 6865498 (E.D. Mich. Dec. 3, 2014)...........22

*Dice v. Bold Technologies*,
913 F. Supp. 2d 389 (E.D. Mich. 2012) ............................................12, 20

*Dorchen/Martin Assocs. v. Brook of Cheboygan, Inc.*,
838 F. Supp. 2d 607 (E.D. Mich. 2012) ............................................8, 9, 10, 16

*Dow Jones & Co. v. Ablaise Ltd.*,
606 F.3d 1338 (Fed. Cir. 2010) .........................................................23

*Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.*,
499 U.S. 340 (1991)...........................................................................9, 10, 11

*Hensley Mfg. v. ProPride, Inc.*,
579 F.3d 603 (6th Cir. 2009) .............................................................16, 17, 18, 19

*Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*,
270 F.3d 298 (6th Cir. 2001) ...............................................................................18

*Interactive Prods. Corp. v. A2Z Mobile Office Solutions, Inc.*,
326 F.3d 687 (6th Cir. 2003) ......................................................................16, 17

*Janda v. Riley-Meggs Industries, Inc.*,
764 F. Supp. 1223 (E.D. Mich. 1991) ................................................................22

*John Labatt Ltd. v. Molson Breweries*,
853 F. Supp. 965 (E.D. Mich. 1994) ..................................................................22

*Kewanee Oil Co. v. Bicron Corp.*,
416 U.S. 470 (1974).............................................................................................21

*Kohus v. Mariol*,
328 F.3d 848 (6th Cir. 2003) .................................................................................9

*Kubik, Inc. v. Hull*,
224 N.W.2d 80 (Mich. App. 1974).....................................................................20

*Lafarge Corp. v. Altech Envt'l USA*,
220 F. Supp. 2d 823 (E.D. Mich. 2002) .....................................................8, 23, 24

*Leapers, Inc. v. First Quality Distributors, Inc.*,
No. 11-15058, 2012 WL 1714938 (E.D. Mich. May 15, 2012).........................22

*Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*,
502 F.3d 504 (6th Cir. 2007) ..............................................................................22

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
387 F.3d 522 (6th Cir. 2004) ......................................................................*passim*

*Michels v. Monaco Coach Corp.*,
298 F. Supp. 2d 642 (E.D. Mich. 2003) .............................................................23

*Mike's Train House, Inc. v. Lionel, L.L.C.*,
472 F.3d 398 (6th Cir. 2006) ..............................................................................20

*Nagle Indus., Inc. v. Ford Motor Co.*,
173 F.R.D. 448 (E.D. Mich. 1997) .....................................................................21

*Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.*,
   299 F. App'x 509 (6th Cir. 2008)..................................................................8, 9

*Service Solutions U.S., LLC v. Autel US, Inc.*,
   C.A. No. 13-10534-TGB-LJM, Dkt. No. 31 ....................................................23

*United States v. Reichert*,
   747 F.3d 445 (6th Cir. 2014) ..........................................................................21

*Veteran Med. Prods., Inc. v. Bionix Dev. Corp.*,
   2008 WL 696546 (W.D. Mich. March 13, 2008)..............................................21

## STATUTES, RULES & REGULATIONS

17 U.S.C. § 101 ....................................................................................................10

17 U.S.C. §§ 101 et seq.........................................................................................5

17 U.S.C. § 1201 ..........................................................................................5, 12-15

17 U.S.C. § 1201 *et seq.*.......................................................................................11

Fed. R. Civ. P. 9(b) ........................................................................................vi, 23

Fed R. Civ. P. 12(b)(2)...................................................................................3, 8, 23

Fed. R. Civ. P. 12(b)(6)..................................................................................*passim*

M.C.L. § 445.903 .................................................................................................22

M.C.L. § 445.1902(d) ...........................................................................................20

M.C.L. § 445.1903(1) ...........................................................................................19

M.C.L. § 445.1908 ...............................................................................................21

M.C.L. § 600.711 .................................................................................................23

## OTHER AUTHORITIES

*Nimmer on Copyrights* § 3.04[B][2].....................................................................10

## STATEMENT OF ISSUES PRESENTED

### Issue #1:

Should Ford's claim for copyright infringement be dismissed on the basis that Ford failed to allege that any original elements of any compilation of data within the FFData file were copied?

### Issue #2:

Should Ford's claim for circumvention of technological measures under the DMCA be dismissed on the basis that Ford did not sufficiently allege ownership of copyrightable subject matter accessed as a result of circumvention, or a prohibited purpose by Autel, or that sufficient facts were not alleged that would show the DMCA exemption for reverse engineering to be inapplicable?

### Issue #3:

Should Ford's Lanham Act trademark claims be dismissed on the basis that Ford failed to allege facts sufficient to show use of the Ford Marks as a trademark, or otherwise on the basis that those allegations lack sufficient factual detail and amount to permissible fair use?

### Issue #4:

Should Ford's claims for trade secret misappropriation and unjust enrichment under Michigan law be dismissed on the basis that insufficient facts are pled to show a "trade secret" or that the conduct complained of was not permissible reverse engineering, or based on preemption principles in the case of the unjust enrichment claim?

### Issue #5:

Should Ford's claims for unfair competition under Michigan law and violation of the Michigan Uniform Trade Practices Act (MUTPA) be dismissed for the same reason as the Lanham Act claims, and additionally based on Fed. R. Civ. P. 9(b) with respect to the MUTPA claim?

### Issue #6:

Should Autel Intelligent Technology Co., Ltd. be dismissed on the basis that personal jurisdiction over that entity is lacking?

## PRELIMINARY STATEMENT

In *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d. 522 (6th Cir. 2004), a copyright action by a manufacturer of ink jet printers against an aftermarket supplier of replacement toner cartridges, the Sixth Circuit dramatically curtailed efforts by manufacturers to misuse copyright law to limit the sales of aftermarket products.  Troubled by the manufacturer's efforts to use copyright law "offensively" rather than defensively, Judge Merritt wrote separately regarding the potential of such misuse to allow manufacturers to "create monopolies" in the aftermarket through use:  "Automobile manufacturers, for example, could control the entire market of replacement parts for their vehicles  . . . ."  *Id.* at 552-53.

Ten years later, Ford has shown Judge Merritt's concern to be well founded, as Ford brings this test case against Autel, a manufacturer of automotive diagnostic equipment, which if successful would have dramatic anticompetitive consequences to all manufacturers and users of aftermarket automotive products.  By its Complaint, Ford seeks to enjoin sales of Autel's products by obtaining a registration of copyright in a data compilation after Autel permissibly reverse engineered it to achieve interoperability, characterizing those efforts as "hacking." Ford then goes a step further, invoking trademark law to misguidedly claim that the *mere mention* of Ford's name is unlawful, even when the only use complained of is Autel's identification of the various vehicle brands serviced by Autel's

products. An examination of the factual allegations in Ford's Complaint reveals that, once stripped of Ford's accusatory characterizations, those allegations do not clear the plausibility bar of *Twombly/Iqbal*, and merit dismissal under Rule 12(b)(6).

With regard to Ford's copyright claims, the infringement claim must be dismissed because the copyright registration, obtained just a few months before bringing this Complaint, states on its face that it is for a *compilation* of data and not for the computer code itself, and there is no allegation that Autel copied the *compilation* of Ford's data. The DMCA anti-circumvention claim fails because there is no allegation that a copyrighted work was accessed by the alleged circumvention or that circumvention was for the purpose of pirating copyrighted works, or that the alleged conduct is anything other than reverse engineering.

The trademark claims fare no better. The *sine qua non* of trademark law is consumer confusion as to product source, but the Complaint is bereft of factual allegations that would support such an inference under *Twombly/Iqbal*. Ford alleges only that Autel uses the Ford mark, *alongside other automakers' names/logos*, on the menu screen of the *Autel-branded product* when it is turned on. This cannot qualify as "trademark use," *i.e.* use of the Ford name as an indicator of source. Alternatively, it is permissible fair use under the Lanham Act.

No aftermarket manufacturer could *ever* sell a product if it could not identify the brand(s) of vehicles for which the product is interoperable.

The state law claims must be dismissed for similar reasons. The trade secret and unjust enrichment claims fail for lack of sufficient allegations of identifiable and enforceable trade secrets, or allegations that they were accessed in confidence. The remaining two state law claims are essentially trademark claims based on the same untenable allegations, and fail for the same reason as the Lanham Act claims.

Finally, one of the two Autel entities, Autel Intelligent Technology Co., Ltd., moves for dismissal per Rule 12(b)(2) because personal jurisdiction is lacking. In sum, the complaint should be dismissed with prejudice.

## FACTUAL ALLEGATIONS

### A.   Copyright and Trade Secret Allegations

Ford alleges that it developed a diagnostic tool referred to as the "IDS System" to diagnose and facilitate the repair of its vehicles. Complaint ("Compl.") ¶ 13. Ford refers to the hardware and software components of the IDS System as its "Diagnostic Tools," which plug into and interfaces with the vehicle's on-board computer system using Ford's "IDS Software." Compl. ¶¶ 14-16. The IDS System, according to Ford, contains various "compilations of data," including compilations "made generally available pursuant to applicable federal statutes,"

and compilations "not made publicly available and constitute trade secrets used by Ford and its network of authorized dealers and repair facilities." *Id.* ¶¶ 18-19.

Ford never states which of this information is publicly available and which is not, and what qualifies the referenced data compilations as "trade secrets." Even so, Ford contends that one of the compilations within the IDS System that Ford believes is a "trade secret" is the allegedly encrypted "FFData" file. Compl. ¶¶ 19-20. Ford alleges it obtained a copyright registration "for data from the FFData," but does not specify *which* data from the FFData file was the subject of the registration, or how much. In any case, the copyright registration, attached to the Complaint as Exhibit A, states it is for a "compilation of data" and that it was not registered until May 20, 2014. *Id.*, Ex. A. Notably, the tracking number on Ford's copyright application, shown on the certificate, is called "F.Autel." *Id.*

Ford then alleges that Autel created "a program titled PARSEALL.EXE" to "obtain unauthorized access to the FFData file compilations of data" in the IDS System, and used it "to extract the FFData file and copied the FFData file onto various products sold by Autel," including Autel's DS708 tool. Compl. ¶¶ 21-23. Ford alleges it knows this because, when the Autel DS708 product is connected to a Ford vehicle and interfaces with its IDS Software, various "test entries" from the FFData file may be found on the screen of the Autel DS708 and the IDS Software. *Id.* ¶¶ 24-26. The presence of this test data "conclusively demonstrates," according

4

to Ford, that "Autel copied Ford's proprietary database." *Id.* ¶¶ 26-27. Ford never alleges, however, any facts to show the *compilation* of data on the Autel product – i.e. the specific selection and arrangement of the allegedly copied data files – is the same as or substantially similar to the selection and arrangement of the subset of the FFData file for which Ford allegedly obtained its registration. *Id.* at 24-28, 32.

Nonetheless, Ford alleges Copyright Infringement under 17 U.S.C. §§ 101 et seq. (First Claim), Circumvention of a Copyright Protection System under 17 U.S.C. § 1201 (Second Claim) and Misappropriation of Trade Secrets (Fifth Claim) and Unjust Enrichment (Sixth Claim). Compl. ¶¶ 31-44, 75-89.

B. <u>Trademark Allegations</u>

Ford also alleges that it owns and possesses "numerous registrations" for the word mark FORD and the so-called "Ford Oval." Compl. ¶¶ 10-11. Ford does not identify these "numerous registrations" with the exception of Reg. No. 3,657,597 – FORD & Design for "automobile repair and maintenance services" in International Class 37, attached as Exhibit B (and identified as the "FORD OVAL" registration). Compl., ¶ 30 & Ex. B. Ford refers to this registration, and the unidentified other "numerous registrations," collectively as the "Ford Marks." *Id.* ¶ 11.

Ford's specific trademark infringement allegations against Autel are set forth in a single paragraph. Compl. ¶ 29. In it, Ford alleges that "Autel also uses the FORD OVAL® on its products without authorization or a license from Ford," and

includes a screen-shot of the electronic menu screen:



Compl. ¶ 29.  In the image, the "USA" touch button is shaded (showing it has been depressed), revealing the FORD name/logo alongside other American car model buttons; other buttons are immediately below for "European" and "Asian" models.

Thus, the only complained of use is the depiction of the FORD name and logo on an electronic menu screen button, alongside other carmakers, on an Autel-branded product.  There is no allegation that Autel used the Ford mark to indicate the source of its product.  *Id.*  There also are no factual allegations stating why Autel's use is likely to create consumer confusion.   *Id.* ¶¶ 45-52.  Even so, Ford alleges that this use by Autel entitles Ford to relief under the Lanham Act, in claims for Federal Trademark Infringement (Third Claim) and False Designation of Origin (erroneously also identified as Ford's Third Claim), Compl. ¶¶ 45-61, and under Michigan law for unfair competition (Fourth Claim) and violation of the

Michigan Uniform Trade Practices Act (Fifth Claim).  *Id.* ¶¶ 62-74.

     C.     <u>Facts Regarding Personal Jurisdiction</u>

Autel ITC is a Chinese corporation that is located and operates in China. *See* Declaration of Hongjing Li attached as Exhibit A at ¶ 4.  Autel.US is a wholly owned subsidiary of Autel ITC based in New York.  (Ex. A at ¶ 21).  Autel ITC lacks contacts within this jurisdiction, separate and apart from the activities of its subsidiary, which would subject it to jurisdiction here.  (Ex. A at ¶¶ 4-23).

## **STANDARD OF REVIEW**

     A.     <u>Legal Standard Under Rule 12(b)(6)</u>

Notice pleading under the Federal Rules of Civil Procedure "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  In *Iqbal*, the United States Supreme Court clarified the standard for dismissal under Rule 12(b)(6), finding dismissal warranted where the complaint does not "allege 'sufficient factual matter' to show that a claim is facially plausible."  *Iqbal*, 556 U.S. at 675.  Under this standard, "[f]actual allegations must be enough to raise a right to relief above a speculative level, on the assumption that all the allegations in the complaint are true . . . ."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 55-56 (2007).  Accordingly, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." *Id.* at 555 (citations omitted).  Rather, to be plausible on its face, the pleading must include sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570.

In the specific context of copyright infringement, the Sixth Circuit has recognized that "[c]opyright infringement lends itself readily to abusive litigation, since the high cost of trying such a case can force a defendant who might otherwise be successful in trial to settle in order to avoid the time and expenditure of a resource intensive case," *Dorchen/Martin Assocs. v. Brook of Cheboygan, Inc.*, 838 F. Supp. 2d 607, 611 (E.D. Mich. 2012), citing *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.*, 299 F. App'x 509, 512 (6th Cir. 2008), as a result of which "greater particularity in pleading" is required for such claims.  *Id.*

B.     Legal Standard Under Rule 12(b)(2)

On a personal jurisdiction challenge under Rule 12(b)(2), the plaintiff bears the burden of proof.  *Lafarge Corp. v. Altech Envt'l USA*, 220 F. Supp. 2d 823, 827 (E.D. Mich. 2002).  Personal jurisdiction must be appropriate under the laws of Michigan and under the Due Process Clause of the United States Constitution.  *Id.*

**ARGUMENT**

**I.     The Copyright Claims Are Not Plausible on Their Face and Should Be Dismissed.**

Ford's copyright claims – both the infringement claim under the Copyright Act, and the circumvention claim under the Digital Millennium Copyright Act

(DMCA) – lack sufficient factual allegations to clear the plausibility bar of *Twombly/Iqbal*.  Both claims should be dismissed accordingly.

A.    The Copyright Infringement Claim Should Be Dismissed.

The pleading defect in Ford's claim for copyright infringement (First Claim for Relief) is that it fails to allege that the *specific compilation of data* that is the subject of its copyright registration was copied by Autel.

"To establish copyright infringement, two elements must be proven: ownership of a valid copyright and copying of constituent elements of the work that are original."  *Dorchen/Martin Assocs.*, 838 F. Supp. 2d at 617, citing *Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.,* 499 U.S. 340, 361 (1991); *see Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003).  For Rule 12(b)(6) purposes, the allegation of copying must be sufficiently particularized to permit a plausible inference that infringement has occurred.  *See Dorchen/Martin Assocs.*, 838 F. Supp. 2d at 611-13, citing *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc*., 299 F. App'x at 512.[1]

---

[1]  In *Dorchen/Martin*, the "Plaintiff . . . identified a work product that infringed on Plaintiff's copyrighted work," and "allege[d] the finished facility as a whole is 'substantially similar,'" the claim was nonetheless dismissed because "Plaintiff has not described the manner in which Defendants' work infringed upon Plaintiff's product in order to adequately give Defendants notice of the claim against them."  Similarly, in *National Business Development Services*, the Sixth Circuit affirmed dismissal of a copyright infringement claim where the defendant's work was alleged to have "incorporate[d] the copyrighted materials" of the plaintiff's copyright, but did not identify the elements incorporated.  299 F. App'x at 511-12.

Here, Ford's conclusory allegation of copying is deficient.  Ford alleges it created a "FFData" file, Compl. ¶ 19, and that unspecified "data from the FFData" is encompassed within the registration, *id.* ¶ 28 & Eh. A.  Not only do these allegations fail to state which "constituent elements" were copied or whether they are "original," *Dorchen/Martin Assocs.*, 838 F. Supp. 2d at 617, they are particularly deficient in light of the limited nature of the authorship stated on the copyright registration it obtained, which clarifies the copyright is for a "compilation of data."  *Id.*; see 17 U.S.C. § 101 (defining "compilation").

That the registration is only for a compilation of data is important, because protection for data compilations is much more limited.  *See, e.g., Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 351 (1991) ("A factual compilation is eligible for copyright if it features an original selection or arrangement of facts, *but the copyright is limited to the particular selection or arrangement*.") (emphasis added); *Nimmer on Copyrights* § 3.04[B][2] (discussing limitation of protection to author's selection, coordination or arrangement).  Thus, Ford has alleged that it has obtained a copyright registration for the *compilation* of *some of the data* from its "FFData" file within its so-called IDS System for diagnosing its vehicles.

The Complaint lacks any allegation, much less a sufficiently factually detailed allegation, that Autel copied the specific *compilation* of the subset of the

FFData file for which registration was obtained.  Rather, Ford just alleges that contents of the FFData file can be found on the Autel device, without commenting on their selection or arrangement.  Compl. ¶ 24-27.  This is insufficient to establish liability, because copying the *elements* of a copyright-registered *compilation* is not unlawful, unless the selection and arrangement of that data is copied.  *See Curcio Webb LLC v. Nat'l Benefit Programs Agency, Inc*., 79 U.S.P.Q.2D 1119, 2006 U.S. Dist. LEXIS 394, at *19 (S.D. Ohio 2006) ("If a work qualifies as a copyrightable factual compilation, it receives only thin copyright protection: 'the facts contained in [the] existing work[] may be freely copied because copyright protects only the elements that owe their origin to the compiler--the selection, coordination and arrangement of facts.'"), quoting *Feist*, 499 U.S. at 359.  Here, Ford's alleged copyright in the compilation of data can only protect, at most, the arrangement of data, not the underlying data itself, which may be "freely copied."  499 U.S. at 359.

Because Ford has alleged only that data in the FFData file was copied, without alleging that the compilation of that data was copied, Ford has alleged nothing unlawful.  The First Claim for Relief should be dismissed accordingly.

B.    The Circumvention of Copyright Protection Claim Merits Dismissal.

Ford's Second Claim for Relief arises under the anti-circumvention provisions of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201

*et seq.* Ford alleges that Autel violated this statute by "decrypting" the FFData file and using the information obtained. Compl. ¶¶ 38-44.

Enacted in 1998, the DMCA does not create new property rights, but rather "creates new 'causes of action for liability'" for copyright owners. *Dice v. Bold Technologies*, 913 F. Supp. 2d 389, 409 (E.D. Mich. 2012), quoting *Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1192 (Fed. Cir. 2004). The statute provides that, subject to certain carve-outs, "No person shall circumvent a technological measure that effectively controls access to a work protected under this title," 17 U.S.C. § 1201(a)(1), and "No person shall manufacture . . . or otherwise traffic in any technology [or] product . . . primarily designed or produced for the purpose of circumventing a technological measure . . . ." 17 U.S.C. § 1201(a)(2); *see Dice*, 913 F. Supp. 2d at 409; *Lexmark Int'l, Inc.*, 387 F.3d at 547.

Here, Ford's DMCA allegations do not state a claim for three reasons: (1) Ford does not allege that it owned copyrightable subject matter at the time of the alleged circumvention; (2) Ford fails to allege a prohibited purpose of the alleged circumvention, and (3) Ford's allegations trigger the DMCA exemption for reverse engineering and do not set forth facts showing why that exemption does not apply.

First, Ford does not allege it owned, at the time of the alleged circumvention, a "work protected under this title." Ford alleged it obtained a copyright registration in May 2014, which clearly post-dated the alleged

circumvention, as the certificate reflects Ford used "F.Autel" as the tracking number for its application. Compl., Ex. A. The complaint is silent as to whether Ford owned a copyrightable work at the time of the alleged circumvention. As explained by the Sixth Circuit:

> One other point deserves mention. All three liability provisions of this section of the DMCA require the claimant to show that the "technological measure" at issue "controls access to *a work protected under this title*," *see* 17 U.S.C. §1201(a)(2)(A)-(C), which is to say a work protected under the general copyright statute, *id*. § 102(a).

*Lexmark Int'l, Inc*., 387 F.3d at 550 (emphasis in original). Perhaps Ford believes that the work for which registration was obtained is the exact same as the work allegedly decrypted, without any modifications, but in the absence of an allegation to that effect, the Court cannot simply assume it to be so.

A second defect is the absence of an allegation, required by subsection (a)(2), that the purpose of the circumvention was to trade in pirated goods. This requirement is rooted in Judge Merritt's concurring opinion in *Lexmark* :

> By contrast, Lexmark would have us read this statute in such a way that any time a manufacturer intentionally circumvents any technological measure and accesses a protected work it necessarily violates the statute regardless of its "purpose." Such a reading would ignore the precise language - "for the purpose of" - as well as the main point of the DMCA - to prohibit the pirating of copyright-protected works such as movies, music, and computer programs. If we were to adopt Lexmark's reading of the statute, manufacturers could potentially create monopolies for replacement parts simply by using similar, but more creative, lock-out codes. Automobile manufacturers, for example, could control the entire market of replacement parts for their vehicles by including lock-out chips. Congress did not intend to allow the

> DMCA to be used offensively in this manner, but rather only sought to reach those who circumvented protective measures "for the purpose" of pirating works protected by the copyright statute. Unless a plaintiff can show that a defendant circumvented protective measures for such a purpose, its claim should not be allowed to go forward.

387 F.3d at 552-53 (Merritt, J., Concurring).  Neither of the other two panel judges disagreed with this point, and their comments reflect agreement.  *See* 387 F.3d at 553 ("[M]y colleagues and I agree on a number of points regarding this case. . . . We agree that the Digital Millennium Copyright Act (DMCA) was not intended by Congress to be used to create a monopoly in the secondary markets for parts or components of products that consumers have already purchased.") (Feikins, J., concurring in part and dissenting in part).  In fact, the very rationale of requiring this element of proof was the concern that a larger manufacturer may "enforce its will against a smaller rival" by imposing upon it "the potential cost of extended litigation and discovery . . . ."  *Id.* at 552.  Thus, because there is no allegation that Autel acted with a purpose of pirating, dismissal is required.

Third, Ford's Complaint lacks sufficient allegations that the reverse engineering carve-out of the DMCA is inapplicable.  17 U.S.C. § 1201 provides:

> (f) Reverse Engineering. — (1) Notwithstanding the provisions of subsection (a)(1)(A), a person who has lawfully obtained the right to use a copy of a computer program may circumvent a technological measure that effectively controls access to a particular portion of that program for the sole purpose of identifying and analyzing those elements of the program that are necessary to achieve interoperability of an independently created computer program with other programs, and that have not previously been readily available to the person engaging in the

> circumvention, to the extent any such acts of identification and analysis
> do not constitute infringement under this title.

In light of Ford's factual allegations – namely, that Autel sells an electronic diagnostic product for use with various automotive brands, including Ford, that incorporates data used by Ford's "network of authorized dealers and repair facilities" to interface with Ford vehicles – the inference from these facts is that use by Autel was "to achieve interoperability"[2] of Autel's product with Ford's on-board automotive engine software control unit, so that independent service facilities, mechanics and individual tinkerers would be able to work on their cars as well. *See, e.g., Lexmark Int'l, Inc*., 387 F.3d 545-46, 50-51. Even if there is a *possible* inference that this section of the DMCA is inapplicable, that is not enough, especially after *Lexmark*; plausibility is required. *Iqbal*, 556 U.S. at 679.

## II. The Federal Trademark Claims Should be Dismissed.

Ford's Lanham Act claims (both denoted "Third Claim for Relief") warrant dismissal because the use alleged by Ford – namely, appearance on a menu screen, to allow a user to specify the make of car on which the Autel product is to be used – is not "trademark use," and there are no factual allegations that would permit a contrary inference. Alternatively, fair use bars recovery as a matter of law.

---

[2] The term "interoperability" is defined in 17 U.S.C. § 1201(f)(4) to mean "the ability of computer programs to exchange information, and of such programs mutually to use the information which has been exchanged."

"The touchstone of liability [for trademark infringement] is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr*., 109 F.3d 275, 280 (6th Cir. 1997). "In determining whether a likelihood of confusion exists, a court will typically weigh the following eight factors: (1) strength of the senior mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the intent of defendant in selecting the mark; and (8) likelihood of expansion of the product lines." *Hensley Mfg. v. ProPride, Inc*., 579 F.3d 603, (6th Cir. 2009), citing *Daddy's Junky Music Stores, Inc*., 109 F.3d at 280; *see also Interactive Prods. Corp. v. A2Z Mobile Office Solutions, Inc.,* 326 F.3d 687, 694 (6th Cir. 2003); *accord Dorchen/Martin Assocs. v. Brook of Cheboygan, Inc.*, 838 F. Supp. 2d at 613 (applying same test to false designation of origin claim).

These factors notwithstanding, the Sixth Circuit in *Hensley Manufacturing* observed that a trademark claim bypasses analysis of these factors, and is subject to dismissal under Rule 12(b)(6), where the mark is not, on its face, used to identify the source of the product – *i.e.*, a non-trademark use.  The court stated:

> But the likelihood of confusion analysis also involves a preliminary question: whether the defendants "are using the challenged mark in a way that identifies the source of their goods." *Interactive Prods.*, 326 F.3d at 695. If they are not, then the mark is being used in a "'non-

trademark' way" and trademark infringement laws, along with the eight-factor analysis, do not even apply. *Id.*

Analogizing that case to *Interactive Products*, where the defendant's use of the plaintiff's mark in a post-domain path was deemed non-actionable, the Sixth Circuit in *Hensley Manufacturing* found that the defendant's use of the plaintiff's "Hensley" mark was not actionable because the plaintiff merely used the name in connection with its advertising – whereas the plaintiff's product name, the "Pivot Point Projection Hitch" or "3P Hitch," was "not even remotely similar to the "Hensley" trademark.  579 F.3d at 610-11.

On this score, the case for dismissal is even stronger here.  Ford does not even allege that Autel uses the Ford Marks in a way that identifies the source of Autel's goods – rather, Ford merely contends, as did Hensley Manufacturing, that its name was used without permission on the Autel-branded product, as though the Lanham Act had somehow become a strict liability statute.  And it is readily apparent from examining the sole use complained of that Autel is *not* using the Ford name as a mark:  rather, as the screenshot shows, it is simply identifying the maker of the car to be worked on, so that the user may depress the button selecting it for use with the Autel product.  It certainly cannot be characterized as use that might cause a mistaken purchasing decision, as the name appears on the electronic screen, which of course would not be visible to prospective buyers.  Further, the

actual trademark under which the Autel product is sold (according to Ford), the Autel DS 708, Compl. ¶¶ 23-27, bears no resemblance at all to the Ford Marks.

Like the plaintiff in *Hensley Manufacturing*, Ford dutifully recites the rote elements of the claims, contending that Autel's conduct was undertaken "with the intent to cause confusion, mistake, and to deceive customers."  Compl. ¶ 49.  But also like *Hensley Manufacturing*, "such a conclusory and 'formulaic recitation' of the elements of a trademark infringement cause of action is insufficient to survive a motion to dismiss."  579 F.3d at 611, citing *Iqbal*, 129 S. Ct. at 1954.  In fact, Ford alleges almost no facts regarding to the eight factors relevant to a likelihood of confusion analysis, much less any facts showing use of the Ford Marks trademark. On the bare facts pled, dismissal is warranted.

These defects aside, fair use also operates as a bar.  The Sixth Circuit reached the same conclusion in *Hensley Manufacturing* where, after finding that the plaintiff failed to state a claim under *Twombly/Iqbal* standards, the Court nonetheless evaluated the fair use defense on a Rule 12(b)(6) motion – and, finding that the defense applied, affirmed dismissal on that basis as well.

Under the fair use doctrine, "the holder of a trademark cannot prevent others from using the word that forms the trademark in its primary or descriptive sense." 579 F.3d at 612, quoting *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 319 (6th Cir. 2001).  Instead, "[t]he only right of exclusion that

trademark law creates in a descriptive word is in the secondary, new, 'trademark' meaning of the word that plaintiff has created. The original, descriptive primary meaning is always available for use by others to describe their goods, in the interest of free competition." *Id.* And so here, it is apparent from the Complaint, including the screenshot shown, that Autel's use was not to identify the product – which already had a name – but rather in a descriptive sense, to describe the automobiles for which the Autel product could be used and calibrated.

Were Ford's allegations enough to state a claim – namely, that aftermarket providers cannot use the Ford name or logo to merely identify the make and model of the vehicle for which it is used – it would be a death knell to the very concept of an aftermarket for replacement parts or services by anyone other than the original manufacturer. A fair use defense clearly applies here, and warrants dismissal.

## III. The Michigan State Law Claims Are Not Plausible on Their Face and Should Be Dismissed.

### A.   The Trade Secret Claims Should be Dismissed.

Based on the same allegations supporting the DMCA claim, Ford alleges in its Fifth Claim for Relief (the second of 2:  Compl. at ¶¶ 75-83) that Autel misappropriated its trade secrets within the meaning of M.C.L. § 445.1903(1), and parrots those allegations in its Sixth Claim for Relief for unjust enrichment (Compl. ¶¶ 84-89). These claims also lack facial plausibility for three reasons.

First, Ford has failed to properly allege the existence of a protectable trade secret, in several respects.  The threshold failure is that Ford does not define what the "trade secrets" in question are.[3]  Beyond that, Ford does not allege facts from which the Court may plausibly infer that the information in question qualifies as a "trade secret."  Such facts are central to this claim, as "[t]he first element of plaintiff alleging misrepresentation of trade secrets must prove is that the information at issue actually consists of a trade secret."  *Mike's Train House, Inc. v. Lionel*, *L.L.C.*, 472 F.3d 398, 410 (6th Cir. 2006).

Merely alleging information is "not publicly available" does not qualify it is a "trade secret":  under Michigan law, a trade secret must "[d]erive independent economic value" from not being generally known.  M.C.L. § 445.1902(d).  Ford has made no allegation of independent economic value.  Also, "the information must, of necessity, be a Secret," *Dice Corp.*, 913 F. Supp. 2d at 406, quoting *Kubik, Inc. v. Hull,* 224 N.W.2d 80, 87 (Mich. App. 1974) – yet Ford admits it shares this information with authorized dealers and repair facilities, with no mention of confidentiality obligations.  Compl. ¶ 18.  In sum, Ford's assertion that

---

[3]  Ford alleges only that its IDS System contains various data compilations, some of which "are made generally available pursuant to applicable federal statutes," while [o]ther compilations of data within the IDS System . . . are not publicly available and constitute trade secrets . . . ."  Compl. ¶ 18.  Apparently these "trade secrets" are more than just the FFData file (because it is identified as only "[o]ne such compilation of data" among those trade secrets, per ¶ 19, and more than the contents of the copyright registration (which is a subset of the FFData, per ¶ 28).

unidentified information is a "trade secret," without factual support, runs counter to *Twombly*'s directive to plead "more than labels and conclusions." 550 U.S. at 555.

Second, the facts as alleged by Ford amount to reverse engineering, which is not actionable as trade secret misappropriation. *See, e.g., Veteran Med. Prods., Inc. v. Bionix Dev. Corp.,* 2008 WL 696546, at *10 (W.D. Mich. March 13, 2008) ("trade secret law does not forbid the discovery of the trade secret by fair and honest means, e.g., independent creation or reverse engineering . . . ."), quoting *Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 489-90 (1974); *see Nagle Indus., Inc. v. Ford Motor Co.,* 173 F.R.D. 448, 454 (E.D. Mich. 1997). State law has no application in this context. *See United States v. Reichert*, 747 F.3d 445, 447 (6th Cir. 2014) ("prior to the DMCA, a copyright owner would have had no cause of action against anyone who circumvented any sort of technological control . . . .").

Third, the unjust enrichment claim must be dismissed in any event because it is preempted by Michigan's Uniform Trade Secrets Act (MUTSA). MCL § 445.1908 ("this act displaces conflicting . . . law of this state providing civil remedies for misappropriation of a trade secret"); *see Compuware Corp. v International Business Machines,* 2003 U.S. Dist. LEXIS 24894, at *23 (E.D. Mich. 2003); *CMI v. Intermet*, 649 N.W.2d 808 (Mich. App. 2002).

B.     The Trademark-Related State Law Claims Also Warrant Dismissal.

Ford also relies on the same trademark infringement allegations to state claims for unfair competition under Michigan law (Fourth Claim for Relief) and violation of the Michigan Uniform Trade Practices Act, M.C.L. § 445.903 (Fifth Claim for Relief:  first of 2, Compl., ¶¶ 69-74).  These claims must be dismissed for the same reason that the Lanham Act claims are dismissed, discussed above.

Courts in this district have long recognized that the same Lanham Act analysis applies to these state law claims.  *See, e.g., John Labatt Ltd. v. Molson Breweries*, 853 F. Supp. 965, 970 (E.D. Mich. 1994); *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc*., 502 F.3d 504, 520 (6th Cir. 2007).  As such, because dismissal of the Lanham Act claims is warranted, dismissal also is appropriate with respect to these state law claims.  *Id.*  Courts have reached this conclusion with regard to unfair competition, *see, e.g., Leapers, Inc. v. First Quality Distributors, Inc.*, No. 11-15058, 2012 WL 1714938, at *9 (E.D. Mich. May 15, 2012) (granting motion to dismiss unfair competition claim where allegations were conclusory and lacked particulars); *Dassault Systemes, S.A. v. Childress*, No. 09-10534, 2014 WL 6865498, at *8 (E.D. Mich. Dec. 3, 2014) (same), and even more readily with regard to claims under the MUTPA, as such claims sound in fraud and must be pled with particularity under Fed. R. Civ. P. 9(b).  *See*, e.g., *Michels v. Monaco Coach Corp.,* 298 F. Supp. 2d 642, 650 (E.D. Mich. 2003).

**IV.   Personal Jurisdiction is Lacking as to Defendant Autel ITC.**

Ford's complaint improperly conflates the activities of two separate and distinct companies to establish personal jurisdiction over Autel ITC, a Chinese entity, based only on the contacts of its U.S. subsidiary, Autel.US. But Autel.US's activities cannot be legally attributed to Autel ITC. *See Dow Jones & Co. v. Ablaise Ltd.,* 606 F.3d 1338, 1349 (Fed. Cir. 2010). Autel ITC therefore seeks dismissal on the additional ground that the Court lacks personal jurisdiction over Autel ITC pursuant to Fed. R. Civ. P. 12(b)(2).[4]

Personal jurisdiction may be grounded in either general jurisdiction or limited (specific) jurisdiction. General jurisdiction exists if a corporation: (1) is incorporated in Michigan; (2) consents to jurisdiction in Michigan; or (3) engages in continuous and systematic business in Michigan. *Id. citing* Mich. Comp. Laws 600.711. Limited personal jurisdiction exists if the defendant maintains minimum contacts with Michigan and those contacts give rise to the claim at issue. *Lafarge*, 220 F. Supp. 2d at 828. Michigan's long-arm statute provides five situations that will subject a corporation to limited personal jurisdiction which, if met, then requires the Court to determine whether asserting jurisdiction is fair under the Due Process Clause. *Lafarge*, 220 F. Supp. 2d at 828.

---

[4] In *Service Solutions U.S., LLC v. Autel US, Inc.,* C.A. No. 13-10534-TGB-LJM, Dkt. No. 31, this Court only found that Autel ITC was subject to limited personal jurisdiction for the patent claims asserted in that case against unrelated products.

Ford's allegations related to personal jurisdiction are found only in paragraph 3 of the complaint, wherein Ford improperly lumps both Autel entities together and alleges:

> This action arises out of wrongful acts committed by Autel that are intentionally targeted at Ford in this District that subject Autel to personal jurisdiction here. Moreover, Autel markets, sells, furnishes, and supports the accused infringing products throughout the United States, including in the State of Michigan residents. . . . .

Compl. ¶ 3.  As an initial matter, these allegations do not sufficiently allege, much less establish, that Autel ITC is subject to general jurisdiction in Michigan.  As shown in the Declaration, Ford cannot do so in any event. (Ex. A  at ¶¶ 4-23).

The complaint also fails to allege any facts sufficient to satisfy the five situations that will subject a corporation to limited personal jurisdiction under Michigan's long-arm statute.  Even if it did, such allegations would be trumped by the accompanying sworn evidence supplied by Autel ITC, confirming that none of the long-arm criteria apply.  (Ex. A.).  In particular, Autel ITC does not ship any products into Michigan (Ex. A at ¶ 12).  Rather, Autel ITC sells accused products to Autel.US, CIF China, which then imports the products into the U.S. and sells them to U.S. distributors nationwide.  (Ex. A at ¶ 22).

Due Process requires that Autel ITC have purposefully directed minimum contacts with Michigan, and Ford has submitted no evidence of this to support its bare allegations.  Among other things, Autel ITC has not:  (1) designed any

products to market specifically in Michigan (Ex. A at ¶ 18), (2) advertised in Michigan (Ex. A at ¶¶ 13-15 ); (3) established a method for providing regular advice to customers in Michigan, and does not provide advice to customers in Michigan (Ex. A at ¶ 19); or (4) marketed any accused products through a distributor who has agreed to serve as the sales agent in Michigan (Ex. A at ¶ 20). This evidence rebuts Ford's bare allegation that Autel ITC is engaged in the sale, marketing or intentional targeting of this jurisdiction.  Because Autel ITC does not have the necessary contacts with Michigan it should be dismissed from this case.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety, with prejudice.

|                                  | Respectfully submitted,              |
| -------------------------------- | ------------------------------------ |
| **DRINKER BIDDLE & REATH LLP**   | **KERR, RUSSELL AND WEBER, PLC**     |
| Keith A. Walter                  | By:/s/Fred K. Herrmann               |
| Zhun Lu                          |     Fred K. Herrmann (P49519)        |
| Thatcher Rahmeier                | Detroit Center, Suite 2500           |
| 222 Delaware Ave., Ste. 1410     | 500 Woodward Avenue                  |
| Wilmington, DE 19801-1621        | Detroit, Michigan  48226             |
| (302) 467-4200                   | (313) 961-0200                       |
| (302) 467-4201 (Facsimile)       | (313) 961-0388 (Facsimile)           |
| keith.walter@dbr.com             | fherrmann@kerr-russell.com           |
| zhun.lu@dbr.com                  |                                      |
| thatcher.rahmeier@dbr.com        |                                      |

*Attorneys for Defendants Autel U.S. Inc. and Autel Intelligent Technology Co., Ltd.*

Dated:  January 30, 2015

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

FORD MOTOR COMPANY, et al.,

      Plaintiffs,

v.

                                    Case No. 2:14-cv-13760

AUTEL U.S. INC. and AUTEL
INTELLIGENT TECHNOLOGY        Judge Terrence G. Berg
CO., LTD.,

      Defendants.

_____/

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to counsel of record.

               Respectfully submitted,

               **KERR, RUSSELL AND WEBER, PLC**

               By:*/s/Fred K. Herrmann*
                  Fred K. Herrmann (P49519)
               Detroit Center, Suite 2500
               500 Woodward Avenue
               Detroit, Michigan  48226
               (313) 961-0200
               (313) 961-0388 (Facsimile)
               fherrmann@kerr-russell.com
Dated:  January 30, 2015     mpowell@kerr-russell.com

               *Attorneys for Defendants Autel U.S. and Autel Intelligent Technology Co., Ltd.*