## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

FORD MOTOR COMPANY, and FORD
GLOBAL TECHNOLOGIES, L.L.C.,
          Plaintiffs,

                                  Case No. 14-13760

        v.                        HON. TERRENCE G. BERG

AUTEL US INC., and AUTEL
INTELLIGENT TECHNOLOGY CO., LTD.,
          Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTION TO DISMISS (DKT. 14)

Before the Court is Defendants Autel US Inc.'s ("Autel US's") and Autel

Intelligent Technology's ("Autel ITC's") joint motion to dismiss (Dkt. 14) filed on

January 30, 2015. The parties have fully briefed this motion and the Court took it

under advisement without oral argument pursuant to E.D. Mich. L. R. 7.1(f)(2) on

March 27, 2015. For the reasons that follow, Defendants' motion to dismiss **IS**

**GRANTED IN PART** and **DENIED IN PART**.

## I.    FACTUAL AND PROCEDURAL HISTORY

Plaintiff Ford Motor Company ("Ford") is a leading automobile manufacturer.

(Dkt. 1, p. 3). It is incorporated in Delaware and has its principal place of business

in Dearborn, Michigan. (*Id.*) Plaintiff Ford Global Technologies is a wholly-owned

subsidiary of Ford and is also a Delaware corporation. (*Id.*) Plaintiffs shall be

referred to jointly as "Ford" or "Plaintiffs."

Apart from cars and trucks, Ford sells automotive repair products.  (*Id.* at pp. 3-4).  Among them is Ford's Integrated Diagnostic System (the "IDS System") which diagnoses potential problems with Ford vehicles and guides their service and repair. (*Id.* at 4).  The IDS system consists of hardware and software.  (*Id.* at 5).  The hardware components (the "Diagnostic Tools") include a 16-pin diagnostic link which sends information from the vehicle to the on-board computer system.  (*Id.*) The software component (the "IDS software") receives information from the Diagnostic Tools and produces diagnoses and recommends repairs based on the information it receives.  (*Id.*)

The IDS software contains various data compilations.  (*Id.*)  Ford alleges that some of the compilations within the IDS software are trade secrets while others are generally available to the public.  (*Id.*)  The "FFData file" is a data compilation within the IDS software.  (*Id.*)  Ford claims that the data compilation that makes up the FFData file is a trade secret protected through encryption and obfuscation technology.[1]  (*Id.*)

Ford alleges that Autel[2] created a program called PARSEALL.EXE to circumvent Ford's security measures and access the FFData file without authorization.  (Dkt. 1, p. 5).  After breaching Ford's security measures, Ford

---

[1] Obfuscation technology "is a programming technique in which code is intentionally obscured to prevent reverse engineering and deliver unclear code to anyone other than the programmer." Techopedia, https://www.techopedia.com/definition/16375/obfuscation, (last visited Sep. 11, 2015).

[2] In its complaint, Ford alleges that "Autel" committed these acts, but Ford fails to distinguish between Defendant Autel US, the US subsidiary, or Defendant Autel ITC, the Chinese parent company, or both.  For purposes of this motion, the Court assumes that Ford is referring to both Defendants when referring to Autel, and the Court will do the same.

contends that Autel inserted the FFData file into its Autel DS708 product, a vehicle diagnoses and repair product that competes with Ford's IDS System. (*Id.* at p. 6). Ford asserts that it has conclusively established that Autel copied the entire FFData file onto its DS708 product because the product contains identical test or dummy codes[3] as Ford's IDS system. (*Id.* at pp. 6-7). Furthermore, Ford claims that it conducted a detailed technical analysis on Autel's DS708 product which revealed that Autel "duplicated" the FFData file in the DS708.

Following Autel's alleged copying of the FFData file, Ford contends that it obtained a copyright "for data from the FFData" file. (*Id.* at p. 7). As proof, Ford points to a Certificate of Registration from the United States Copyright Office which states that Ford Global Technologies possesses a copyright for a "compilation of data." (Dkt. 1, Ex. A). The copyright registration lists the effective date of registration as May 20, 2014. (*Id.*)

In addition to infringing on its copyrighted information, Ford alleges that Autel infringed upon its trademarks, including its world-famous corporate logo, the "Ford Oval." (*Id.* at p. 7). A screenshot of the Autel DS708's electronic menu screen shows the Ford Oval alongside the logos of Chrysler and General Motors on the "USA" menu option. (*Id.* at p. 8). The screenshot also includes options for European and Asian carmakers. (*Id.*)

---

[3] These codes are referred to as dummy codes because they are fictitious and do not correspond to any actual Ford parts or vehicles. (Id.)

3

On September 29, 2014, Ford and Ford Global Technologies filed this suit against Defendants.  (Dkt. 1).  Plaintiffs seek relief on various counts, several  of which are misnumbered in the complaint.  For clarity, the counts are now numbered as follows:

- <u>Count 1:</u> Copyright Infringement under 17 U.S.C. § 101;

- <u>Count 2:</u> Circumvention of Copyright Protection under 17 U.S.C. § 1201;

- <u>Count 3:</u> Federal Trademark Infringement under 15 U.S.C. § 1114;

- <u>Count 4:</u> False Designation of Origin under 15 U.S.C. § 1125(a);

- <u>Count 5:</u> Unfair Competition under Michigan Law;

- <u>Count 6:</u> Violation of Michigan Uniform Trade Practices Act, under Mich. Comp. Laws § 445.903;

- <u>Count 7:</u> Misappropriation of Trade Secrets under Mich. Comp. Laws § 445.1903;

- <u>Count 8:</u> Unjust Enrichment.

On January 30, 2015, Defendants filed a motion to dismiss pursuant for Fed. R. Civ. Proc. 12(b)(6) for failure to state a claim.  (Dkt. 14).  In addition, Defendant Autel ITC seeks dismissal under Fed. R. Civ. Proc. 12(b)(2) for lack of personal jurisdiction.  The motion is fully briefed.[4]  On March 27, 2015, the Court took these motions under advisement without oral argument pursuant to E.D. Mich. Local Rule 7.2(f)(2).  (Dkt. 22).

---

[4] The Court struck Ford's original response brief for not complying with E.D. Mich. Local Rule 5.1(a)(3).

## II.   ANALYSIS

### A.  Standard of Review

"The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). Under Rule 12(b)(6), the complaint is viewed in the light most favorable to the plaintiff, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228–29 (6th Cir. 1997) (quoting *Columbia Nat'l Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).

"However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Tatum*, 58 F.3d at 1109; *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 488 (6th Cir. 2009). "To survive a motion to dismiss, [a plaintiff] must plead enough factual matter that, when taken as true, state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal quotations omitted). Plausibility requires showing more than the "sheer possibility of relief but less than a probab[le] entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir.

5

2010).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Consideration of a motion to dismiss under Rule 12(b)(6) is confined to the pleadings.  *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008).  Assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings.  *See Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).  However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss."  *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ.P. 10(c)); *see also Koubriti v. Convertino*, 593 F.3d 459, 463 n.1 (6th Cir. 2010).

In the Sixth Circuit, copyright infringement claims are subject to a higher pleading requirement.  "Copyright infringement, like anti-trust actions, lends itself readily to abusive litigation, since the high cost of trying such a case can force a defendant who might otherwise be successful in trial to settle in order to avoid the time and expenditure of a resource intensive case."  *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.*, 299 Fed. App'x 509, 512 (6th Cir. 2008) (affirming district court dismissal of copyright infringement case on 12(b)(6) grounds for failure to state a claim); *Dorchen/Martin Assocs., Inc. v. Brook of Cheboygan, Inc.*, 838 F. Supp. 2d 607 (E.D. Mich. 2012).  As such, copyright

6

infringement claims require "greater particularity in pleading through showing plausible grounds" for infringement. *National Business*, 299 Fed. App'x at 512. Showing plausible grounds means pleading "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [copyright infringement]." *Id.* (internal citation omitted).

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff has the burden of proving the court's jurisdiction over the defendant. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002); *see also Children's Legal Services, PLLC v. Shor Levin and Derita, PC*, 850 F. Supp. 2d 673, 679 (E.D. Mich. 2012). In ruling upon a motion to dismiss for lack of personal jurisdiction, the district court has three procedural alternatives: "[it] may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

### B. Discussion

### 1. The Complaint Fails to Plead a Copyright Infringement Claim.

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'n Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *see*

7

*also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004).

"The first prong tests the originality and non-functionality of the work . . . both of which are presumptively established by the copyright registration." *Lexmark*, 387 F.3d at 534. Here, Ford has provided a copyright registration for a data compilation, titled "CALID_VIDQID_REC," according to the copyright registration. This registration presumptively establishes the originality of this data compilation.

Next, the Court must determine whether Ford has adequately pled the second prong of copyright infringement, that Autel has copied the constituent elements of its data compilation that are original. "The second prong tests whether any copying occurred (a factual matter) and whether the portions of the work copied were entitled to copyright protection (a legal matter)." *Id.*

"[T]he copyright in a factual compilation is thin." *Feist*, 499 U.S. at 349. This is so because "[t]he most fundamental axiom of copyright law is that no author may copyright his ideas or the facts he narrates." *Id.* at 344-45 (internal quotation marks omitted). Since the underlying facts of a factual compilation are not copyrightable, facts may be "freely copied" as only the "*selection, coordination, and arrangement* of facts" are entitled to copyright protection. *Id.* at 359 (emphasis added). Thus, "a subsequent compiler remains free to use facts contained in another's publication to aid in preparing a competing work, so long as the

8

competing work does not feature the same selection and arrangement." *Id.* at 349.

Accordingly, Ford's data compilation's selection, coordination and arrangement are

the only constituent elements that are original.

The question raised by Defendants' motion is whether Ford has adequately

plead facts sufficient to show that Autel infringed upon Ford's data compilation's

original elements.  Ford alleges the following:

> 27.  A detailed technical analysis of data files stored on Autel's
> DS708 device shows that the FFData file is duplicated on Autel's
> DS708 device.

> 28.  Ford has obtained a copyright registration from the United
> States Copyright Office for data from the FFData.

(Dkt. 1, p. 7).  It is unclear from the Complaint's obligations how much data from

the FFData file is included in the data compilation titled "CALID_VIDQID_REC,"

which was copyrighted.

As written, the Complaint alleges that Plaintiffs obtained a copyright in the

data compilation "for data from the FFData" file.  That copyright protects the

selection, coordination and arrangement of that data, but not the data itself.  The

Complaint alleges that the FFData file was duplicated on Autel's DS708 device.

From this allegation, one might infer that the "data from the FFData file"

(including its exact selection, coordination and arrangement), for which Ford

obtained the copyright, was also duplicated on Autel's DS708 device.  But an

inference is a not sufficient ground to base a claim of copyright infringement of a

data compilation, where clearer and more accurate language would do so without

the need to draw any inferences.  As stated, the only original elements of Ford's data compilation are its selection, coordination, and arrangement of the facts.  As the Complaint currently stands, Ford has failed to plead with specificity that Autel copied the same or substantially similar selection, coordination and arrangement of its copyrighted data compilation.  The Complaint only claims that Autel duplicated Ford's FFData file, and that this file contains some of Ford's copyrighted data compilation.  It is unclear whether Ford is alleging that Autel copied the selection, coordination, and arrangement of that data.  The Complaint fails to allege whether this occurred or not.

This conclusion is buttressed by the Sixth Circuit's holding that copyright infringement claims require greater particularity in pleading.[5]  Even at the 12(b)(6) stage, general allegations of copyright infringement which do not identify specific infringing materials are insufficient to state a claim.  *National Business*, 299 Fed. App'x at 512.  Further, even where specific infringing materials are identified, a plaintiff must describe "the manner in which [a defendant's] work infringe[s] upon" the plaintiff's copyrighted work."  *Dorchen/Martin Assocs., Inc. v. Brook of Cheboygan, Inc.*, 838 F. Supp. 2d 607, 612 (E.D. Mich. 2012).  In *Dorchen*, the plaintiff alleged that the defendants infringed its copyrighted architectural design plans by constructing a substantially similar building.  *Id.* at 610.  The court held

---

[5] In its response, Ford does not address the Sixth Circuit's higher pleading requirement for copyright infringement claims.  Ford instead cites *Center for Bio-Ethical Reform v. Napolitano*, 648 F. 3d 365, 369 (6th Cir. 2011), for the proposition that a plaintiff must only plead a "plausible" claim for relief. This case is inapposite as it did not involve a copyright infringement claim and thus did not trigger the heightened pleading requirement for copyright infringement claims.

that although the plaintiff identified *what* infringed on its product, that it had not plead *how* its product had been infringed upon. *Id.* at 612.

Thus, even when viewing the Complaint in the light most favorable to Plaintiffs—as the Court must do at this stage—the Court holds that the Complaint has failed to state a claim that the copyright of its data compilation has been infringed by Defendants because Plaintiffs have not adequately plead that Autel copied the selection, coordination and arrangement of its copyrighted data compilation. For these reasons, Autel's motion to dismiss **IS GRANTED** as to Count 1. However, pursuant to Fed. R. Civ. Proc. 15(a)(2), the Court will grant Plaintiffs leave to amend so that they may have the opportunity to attempt to plead a viable copyright infringement claim by alleging additional facts.

### 2. The Complaint Fails to Plead a Circumvention of Copyright Protection Claim.

Congress enacted the Digital Millennium Copyright Act ("DMCA,") 17 U.S.C. § 1201, *et seq.*, in 1998 to address 'the ease with which pirates could use web-based services to copy and distribute . . . copyrightable works in digital form.'" *United States v. Reichert*, 747 F.3d 445, 457 (6th Cir. 2014).

The DMCA provides new causes of action for liability, not new rights. *Dice Corp. v. Bold Techs.*, 913 F. Supp. 2d 389, 409 (E.D. Mich. 2012) (citing *Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1192 (Fed. Cir. 2004)). The DMCA is focused on the "*circumvention* of digital walls guarding copyrighted material (and trafficking in circumvention tools)" not with the use of

the materials following the circumvention.  *Id.* at 409 (citing *Universal City Studios, Inc. v. Corley*, 272 F.3d 429, 443 (2d Cir. 2001) (emphasis in original).

There are three liability provisions under the DMCA.  Under § 1201(a)(1)(A), "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title."  Section 1201(a)(2) provides that "[n]o person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that—

> (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title;
>
> (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access   to a work protected under this title; or
>
> (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.

Lastly, under §1201(b), "[n]o person shall manufacture, import, offer to the public, provide, or   otherwise traffic in any technology, product, service, device, component, or part thereof, that—

> (A) is primarily designed or produced for the purpose of circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof;
>
> (B) has only limited commercially significant purpose or use other than to circumvent protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof; or

12

(C) is marketed by that person or another acting in concert with
that person with that person's knowledge for use in
circumventing protection afforded by a technological measure
that effectively protects a right of a copyright owner under this
title in a work or a portion thereof.

In short, the Act first prohibits the *act* of circumventing any programs or measures

intended to control access to a protected work; second, it makes it unlawful to

manufacture or sell technologies designed to circumvent such measures; and third,

it prohibits manufacturing, selling or providing devices or technologies that are

designed to circumvent protections intended to safeguard a copyright owner's

rights.[6]

    In its complaint Ford appears to rely on both §§ 1201(a)(1) and 1201(a)(2), as

it alleges that Autel circumvented its technological measures that effectively

controlled access to the FFData file and that Autel created and used the

PARSEALL.EXE program to "decrypt the FFData, or otherwise to avoid, bypass,

remove, deactivate, or impair the technological measures implement [sic] by Ford to

control access to the data in the FFdata file."  Ford further alleges that the

PARSEALL.EXE program has a limited commercially significant purpose or use

other than to circumvent Ford's technological security measures.

---

[6] "The DMCA's anti-circumvention provision prohibits [1] the act of circumvention itself, 17 U.S.C. §
1201(a)(1), and [2] also targets the availability of circumvention technologies by making it unlawful
to traffic in technologies designed to circumvent [technological protection measures] that control
access to copyrighted works, § 1201(a)(2)." *Reichert*, 747 F.3d at 457.  Third, the DMCA prohibits,
under § 1201(b), "devices that circumvent 'technological measures' protecting 'a right' of the
copyright owner . . . ." *Lexmark*, 387 F.3d at 545.  Section 1201(b) "prohibits devices aimed at
circumventing technological measures that allow some forms of 'access' but restrict other uses of the
copyrighted work . . . such as streaming media . . . ." *Id.*

13

In its motion to dismiss, Autel argues that Ford has failed to state a DMCA claim for three reasons:  (1) Ford has not alleged that it owned a copyrightable subject matter *at the time of Autel's alleged circumvention*; (2) Ford has failed to allege an improper purpose for circumvention; and (3) Ford's allegations fall within the reverse engineering defense under the DMCA.

Turning to the first ground for dismissal, Autel argues that Ford has failed to allege that it owned a valid copyright *at the time* of Autel's alleged circumvention of Ford's technological security measures.[7]  In *Lexmark*, the Sixth Circuit stated that all three liability provisions within the DMCA "require the claimant to show that the 'technological measure' at issue "controls access to *a work protected under this title,*" *see* 17 U.S.C. § 1201(a)(2)(A)-(C), which is to say a work protected under the general copyright statute[.]"  *Id.* at 550 (emphasis in original).  The Court of Appeals in that case instructed the district court to consider on remand whether the plaintiff's copyrighted printer toner loading program had "sufficient originality to warrant copyright protection."  *Id.*

The Complaint in this matter does not allege that Ford owned a copyright on its data compilation at the time when the alleged circumvention of its technological security measures took place.  Plaintiffs simply allege that Autel circumvented the technological security measures which protected the FFData file.  The record shows that Ford obtained a copyright registration on its data compilation on May 20, 2014,

---

[7] Ford did not offer any response in opposition to Autel's first or second grounds for dismissal of Ford's DMCA claims in its response to Autel's motion to dismiss.

only a few months before this lawsuit was filed.  The Complaint is silent as to the date when the act of circumvention allegedly occurred, though the allegations appear to suggest it happened long before May 20, 2014.  To state a claim under § 1201(a)(1), Plaintiffs would need to allege that Autel allegedly circumvented Ford's technological security measures on its data compilation at a time when that data compilation was a work "protected under" the copyright laws.

In its second ground for dismissal, Autel asserts that Ford's circumvention claim must be dismissed because it fails to allege that Autel circumvented its technological security measures for an improper purpose under § 1201(a)(2). Section 1201(a)(2)(A) states that "[n]o person shall manufacture, import, offer to the public, provide or otherwise traffic in any technology, product, service, device, component, or part thereof that—is primarily designed or produced *for the purpose of* circumventing a technological measure that effectively controls access to a work protected under this title."  In *Reichert*, the Sixth Circuit explained that "the DMCA's anti-circumvention provision was designed to support the efforts of copyright owners to protect their works from piracy behind digital walls such as encryption codes or password protections by banning the use, manufacture, or sale of technologies that circumvent digital copyright controls."  *Reichert*, 747 F.3d at 457 (internal quotation marks omitted).  *Reichert* also adopted Judge Merritt's concurrence in *Lexmark*, stating:

> The legislative history of the DMCA makes clear that the anti-circumvention provision is not intended to function as a comprehensive ban on all circumvention technologies; rather, its purpose is to prevent those technologies from being used as a tool for copyright infringement and to provide remedies for copyright holders against individuals and entities who *facilitate the widespread unauthorized reproduction of copyrighted works* by making such technologies available to the public.

*Id.* at 458 (emphasis added) (citing *Lexmark*, 387 F.3d at 552) (Merritt, J., concurring) ("Such a reading would ignore the precise language—'for the purpose of'—as well as the main point of the DMCA—to prohibit the pirating of copyright-protected works such as movies, music, and computer programs."). Judge Merritt's concurrence further noted that the DMCA "requires plaintiffs *as part of their burden of pleading* and persuasion to show a purpose to pirate on the part of defendants." *Lexmark*, 387 F.3d at 552 (Merritt, J., concurring) (emphasis added). Thus, the Sixth Circuit interprets § 1201(a)(2)(A) to require that the circumvention be done "for the purpose of" engaging in piracy, that is, the widespread unauthorized distribution of copyrighted works.

The Complaint in this matter does not allege that Autel circumvented its technological security measures "for the purpose of" of engaging in piracy. Therefore, Ford has failed to meet its pleading burden and its copyright circumvention claims must be dismissed.

Because the Complaint as currently drafted fails to plead a cause of action under the DMCA for the two reasons stated above, it is not necessary to address

16

Autel's third ground for dismissal, that its circumvention constitutes permissible reverse engineering under the statute.

For the reasons explained above, the circumvention of copyright protection claim in Count 2 will be dismissed, and leave is granted to file an amended complaint.

### 3. Ford's Trademark Infringement Claims

Ford also brings claims of trademark infringement, under 15 U.S.C. § 1114, and false designation of origin, under 15 U.S.C. § 1125(a). "To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege facts establishing that: (1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

"The touchstone of liability under § 1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). The likelihood of confusion analysis applies to both trademark infringement and false designation of origin claims. *Interactive Prods. Corp. v. a2z Mobile Office Sols., Inc.*, 326 F.3d 687, 694 (6th Cir. 2003). ("Similarly, to succeed on a false designation of origin claim, a plaintiff must show that the false designation creates a 'likelihood of confusion.'"); *see also Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006) ("Audi II").

17

"When determining whether a likelihood of confusion exists, a court must examine and weigh the following eight factors: 1. strength of the senior mark; 2. relatedness of the goods or services; 3. similarity of the marks; 4. evidence of actual confusion; 5. marketing channels used; 6. likely degree of purchaser care; 7. the intent of defendant in selecting the mark; and 8. likelihood of expansion of the product lines." *Daddy's Junky Music*, 109 F.3d at 280.

However, before applying the eight factor test, courts ask a preliminary question: "whether the defendants are using the challenged mark in a way that identifies the source of their goods." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 610 (6th Cir. 2009) (citing *Interactive Products*, 326 F.3d at 694.). "If they are not, then the mark is being used in a non-trademark way and trademark infringement laws, along with the eight-factor analysis, do not even apply." *Id.* at 610 (internal quotation marks and citation omitted).

Thus, in *Hensley*, the Sixth Circuit affirmed the district court's grant of the defendants' motion to dismiss where the defendants did not use the plaintiff's trademark in a way that identified the source of the goods. *Id.* at 603. One of the defendants, Jim Hensley, had developed the "Hensley Arrow" trailer hitch for the plaintiff, Hensley Manufacturing, and had conveyed a trademark in the name "Hensley" to the plaintiff. *Id.* at 607. Jim Hensley later defected to a rival trailer hitch manufacturer, the defendant Pro Pride, and developed a new trailer hitch. *Id.* at 607. Pro Pride marketed this new hitch as the "3P Hitch," and heavily

18

advertised the fact that defendant Jim Hensley had developed the new hitch along with Hensley's life story. *Id.* at 607-08. The advertisements included specific disclaimers that Hensley was no longer associated with the plaintiff. *Id.* at 608.

The Sixth Circuit held that the plaintiff failed to allege sufficient facts to show a likelihood of confusion as to the source of the product, and thus could not maintain a trademark infringement claim. *Id.* at 611. Although Pro Pride used Jim Hensley's name in its advertising, the Sixth Circuit noted that the names of the products—the 3P Hitch and the Hensley Arrow—were not similar and that Pro Pride had clearly designated itself as the maker of the 3P Hitch. *Id.* at 311-12. Further, the Sixth Circuit highlighted that Pro Pride used Jim Hensley's name in its advertising and never "simply use[d] the word 'Hensley' in connection with the 3P Hitch." *Id.* at 611.

Similarly, in *Interactive Products*, the Sixth Circuit granted summary judgment in favor of the defendants after finding no likelihood of confusion. The plaintiff complained that the defendants' website contained its trademarked "laptraveler" in the defendants' post-domain web address. *Interactive Products*, 326 F.3d at 695. However, the Sixth Circuit held that this was insufficient to establish a likelihood of confusion since in contrast to a website's domain name, a website's post-domain path "does not typically signify source." *Id.* at 696; *cf. PACCAR Inc. v. TeleScan Techs., L.L.C.*, 319 F.3d 243, 250 (6th Cir. 2003) ("words in many domain names can and do communicate information as to the source or sponsor of the web

site.").  Further, the Sixth Circuit found no similarity between the plaintiff's trademark in the "Lap Traveler" and the defendant's rival "Mobile Desk."  326 F.3d at 695.

Here, Ford's trademark claims revolve around Autel's use of its trademarked corporate logo, the Ford Oval, and Autel's listing of the program "Ford V2.10" under the Ford Oval in Autel's DS708.  Ford argues that these uses cause a likelihood of confusion as to the source of Autel's diagnostic tool.  Autel counters that its use of the Ford Oval in the DS708's digital menu screen is not likely to cause confusion regarding the source of the DS708 because it is only using the Ford Oval, along with the GM Logo and the Chrysler Logo, so that the DS708's users can choose the correct diagnostic program that will be compatible with their respective vehicle manufacturer.

Viewing the Complaint as a whole, the facts are sufficient to support an allegation of likelihood of confusion.  Autel's use of Ford's trademarked and world-famous Ford Oval goes farther than Pro Pride's use of Jim Hensley's name because, unlike in *Hensley*, Autel is actually using Ford's trademarked logo on its menu screen.  This case also differs from *Interactive Products*, because there the post-domain web address included only the text of the trademark "Lap Traveler" not the actual logo with its distinctive shape, color and lettering.[8]  Further, the "Sixth Circuit recognizes that a likelihood of downstream confusion, also called 'post-sale'

---

[8] Moreover, *Interactive Products* was decided at the summary judgment stage.

confusion, is actionable: 'Since Congress intended to protect the reputation of the manufacturer as well as to protect purchasers, the Act's protection is not limited to confusion at the point of sale.'" *Gen. Motors Corp. v. Keystone Auto. Indus., Inc.*, 453 F.3d 351, 356 (6th Cir. 2006).  In addition, the allegations in the Complaint are not only that the Ford logo appears in the DS708, but also that Autel uses Ford's marks "in connection with the advertisement, promotion, and sale" of Autel's products. (Dkt. 1, p. 11).  Without prejudging Autel's arguments that its use of the Ford Oval, alongside the logos of other carmakers, on its menu screen bears only on the DS708's compatibility with different car manufacturers—and not on the DS708's source, the allegations in the Complaint are sufficient at this stage to support a reasonable inference of a likelihood of confusion arising from Autel's use of Plaintiffs' trademark.

Autel next argues that, even if there is a likelihood of confusion, its use of the Ford logo falls within the "fair use" defense to trademark infringement.  "In evaluating a defendant's fair use defense, a court must consider whether defendant has used the mark: (1) in its descriptive sense; and (2) in good faith."  *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 920 (6th Cir. 2003).  As the Supreme Court has held, "some possibility of consumer confusion must be compatible with fair use."  *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 121 (2004). The Court finds that this question cannot be resolved from a review of the pleadings alone.  At this stage of the proceeding the Court cannot determine whether Autel is

21

entitled to invoke the fair use defense as a matter of law.[9]  Consequently, Autel's motion to dismiss Ford's trademark infringement claims **IS DENIED**.

### 4.  Ford's State Law Claims

Autel also seeks dismissal of Ford's four state law claims including:  unfair competition (Count 5); violation of the Michigan Uniform Trade Secrets Act ("MUTSA") under Mich. Comp. Laws § 445.903 (Count 6); misappropriation of trade secrets under Mich. Comp. Laws § 445.1903 (Count 7); and unjust enrichment (Count 8).  Having denied Autel's motion to dismiss Ford's federal trademark infringement claims, Autel's motion to dismiss Ford's state law trademark-related claims (Counts 5 and 6) **IS DENIED** for the same reasons, because Ford has plead sufficient facts to allege likelihood of confusion as to source.

Regarding Ford's misappropriation of trade secrets claim, the MUSTA defines a trade secret to include a "formula, pattern, compilation, program, device, method, technique, or process" which:

> (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

> (ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

---

[9] The Court notes that fair use can potentially apply even where a company's trademark is replicated without authorization.  *See Volkswagen AG v. Dorling Kindersley Pub., Inc.*, 614 F. Supp. 2d 793, 800 (E.D. Mich. 2009) ("the Court finds that the VW EMBLEM is used only to describe the actual vehicle. Accordingly, the claim is barred by the fair use defense as a matter of law.") (granting the defendant's motion for summary judgment in regards to the use of the VW emblem in a book.). However, at this stage of the proceedings, the Court cannot make this determination.

22

Mich. Comp. Laws § 445.1902(d).

Ford alleges that its IDS system contains some generally available compilations of data as well as others that are not publically available and constitute trade secrets "used by Ford and its network of authorized dealers and repair facilities."[10]  It alleges that the FFData is "one such compilation of data" and that Ford protects its IDS system trade secrets through encryption and obfuscation technology.  Unlike Ford's copyright infringement claim, Ford's misappropriation of trade secrets claim is not subject to a higher pleading requirement.  Further, "when material such as design drawings or manuals are trade secrets based on a unique combination of both protected and unprotected material, a plaintiff should not be obligated to identify which components of the protected material is secret." *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 411 (6th Cir. 2006).  Accepting Ford's allegations as true, the Court finds that Ford has adequately plead trade secret misappropriation.[11]

Lastly, Autel seeks dismissal of Ford's unjust enrichment claim because it alleges that this claim is preempted by the MUTSA.  "Section 8 of the Michigan Uniform Trade Secrets Act ("MUTSA") preempts claims based on conflicting state tort law and provides civil remedies for misappropriation of trade secrets." *Am.*

---

[10] Ford's disclosure that it shares its trade secrets "*with authorized dealers and repair facilities*" does not defeat its trade secret claim, nor has Autel provided authority for this proposition.  (Dkt. 1, p. 5) (emphasis added).  On the contrary, Ford's allegation that it only shares its trade secrets with authorized dealers strongly suggests that this information is not generally available.

[11] Autel contends that Ford's trade secret claim is in reality an attempt to bring a DMCA claim under state law.  However, here Ford is alleging that Autel misappropriated its trade secrets under § 445.903, not that Autel improperly circumvented its protective measures.

*Furukawa, Inc. v. Hossain*, No. 14-CV-13633, 2015 WL 2124794, at *19 (E.D. Mich. May 6, 2015); *see* Mich. Comp. Laws § 445.1908 ("[T]his act displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret."). "The critical inquiry for courts in determining whether a claim is displaced by the MUTSA is whether the claim in question is based *solely* on the misappropriation of a trade secret." *Id.* (emphasis in original). "If a claim is based solely upon the misappropriation of a trade secret, the claim must be dismissed." *Id.* (internal quotation marks and citation omitted). Here, Plaintiffs state that "[b]y wrongfully acquiring Ford's trade secrets, by misappropriating them for Autel's own use, and by the related wrongdoing, Autel has received a benefit from Ford." This claim is based solely on Autel's alleged misappropriation of Ford's trade secrets and accordingly, is preempted by MUTSA. As such, Autel's motion to dismiss **IS GRANTED** as to Count 8.

### 5.  Autel ITC is Subject to Personal Jurisdiction in Michigan.

As the Plaintiff, Ford "bears the burden of establishing the district court's personal jurisdiction" over Autel ITC.[12] *Neogen Corp.*, 282 F.3d at 883. Where, as here, a court decides a motion to dismiss without an evidentiary hearing "a plaintiff need only present a *prima facie* case for jurisdiction. *Audi AG v. Volkswagon of Am., Inc.*, 341 F. Supp. 2d 734, 741 (E.D. Mich. 2004) ("Audi I"). Thus, "[a] court

---

[12] The parties do not dispute that this Court has jurisdiction over Autel US. The parties only dispute whether the Court has jurisdiction over Autel ITC, the Chinese parent company of Autel US. The Court's discussion of Autel in this section is limited to Autel ITC.

24

must consider all affidavits and pleadings in a light most favorable to plaintiffs, and does not weigh the controverting assertions of the party seeking dismissal." *Id.*

Under Michigan law, a court's exercise of jurisdiction can consist of either general jurisdiction under Mich. Comp. Laws § 600.711 or limited jurisdiction under Mich. Comp. Laws § 600.715.  Here, Ford only contends that Autel ITC is subject to limited jurisdiction.  Michigan's limited jurisdiction statute specifies five activities that will subject a non-resident corporation to limited jurisdiction: "(1) the transaction of any business within the state; (2) the doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort; (3) the ownership, use, or possession of any real or tangible personal property situated within the state; (4) contracting to insure any person property, or risk located within the state at the time of contracting; and (5) entering into a contract for services to be performed or for material to be furnished in the state by the defendant."  Mich. Comp. Laws § 600.715.  Regardless, "[t]he Michigan Supreme Court has construed Michigan's Long-Arm Statute to bestow the broadest possible grant of personal jurisdiction consistent with due process."  *Audi I*, 341 F. Supp. 2d at 741; *see also Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003) ("[w]here the state long-arm statute extends to the limits of the due process clause, the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process."  Thus,

25

limited jurisdiction exits if the exercise of such jurisdiction comports with the requirements of due process.

As explained by the Sixth Circuit, limited jurisdiction is proper if the defendant's contact with the forum state satisfies the three-part *Southern Machine Company Test*,

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequence caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Bridgeport Music*, 327 F.3d at 477-78 (6th Cir. 2003) (citing *Southern Machine Co. v. Mohasco Industries, Inc.* 401 F.2d 374 (6th Cir. 1968)).

This Court recently ruled that Autel ITC was subject to limited jurisdiction in Michigan in a patent infringement matter based on Autel ITC's importation of allegedly infringing products into the United States and Michigan. *Service Solutions v. Autel. US Inc.*, Case No. 13-10534, Dkt. 31). Although Autel ITC correctly notes that the Court's prior order involved its patents and not its allegedly infringing diagnostic system, the analysis from that case is applicable here.

### a. *Purposeful Availment*

As explained in the *Service Solutions* order, Autel ITC's contacts satisfy the purposeful availment prong under Justice O'Connor's more stringent stream of commerce plus analysis in *Asahi Metal Industry Co. v. Superior Court of Cal.*, 480

U.S. 102, 112 (1987).  There Justice O'Connor provided various examples of conduct that would suggest an "intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State."  *Asahi*, 480 U.S. at 112 (O'Connor, J.).

Like the defendant in *Service Solutions*, here Ford alleges that Autel ITC (1) utilizes a distribution network whereby national car chains CARQUEST and NAPA advertise Autel ITC's diagnostic tools in Michigan; (2) obtains On-Board Diagnostics ("OBDs") from membership in a trade association from Michigan based manufacturers, including Ford; (3) maintains an interactive website which permits customers, including Michigan customers, to download updates for Autel's allegedly infringing products.  (Declaration of Jason Kosofsky, Dkt. 19); (Declaration of Kevin Brady, Dkt. 20).  Taking these assertions as true, as the Court must in the absence of an evidentiary hearing, Ford has clearly alleged that Autel ITC has purposefully availed itself of the privilege of acting in Michigan.

### b.  *Arising From*

The second prong, whether the cause of action "arises from" the defendant's activities, "does not require that the cause of action formally arise from defendant's contacts with the forum; rather, this criterion requires only that the cause of action, of whatever type, *have a substantial connection with* the defendant's in-state

27

activities." *Third Nat. Bank in Nashville v. WEDGE Grp. Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989) (emphasis in original) (internal quotation marks omitted). "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]." *Id.* (internal citation omitted). Accepting Plaintiff's contentions as true, this prong is satisfied as Ford's claims arose out of Autel ITC's contacts with Michigan.

### c. *Reasonable*

"[W]hen the first two elements are met, an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion." *Third National Bank*, 882 F.2d at 1092. Nonetheless, the Court must still ensure that its exercise of jurisdiction comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). "A court must consider several factors in this context, including [1] the burden on the defendant, [2] the interest of the forum state, [3] the plaintiff's interest in obtaining relief, and [4] the interest of other states in securing the most efficient resolution of controversies." *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1268 (6th Cir. 1996) (internal quotation marks omitted).

Reviewing these factors, the Court reaches the same conclusion it previously reached in *Service Solutions*. Here, Autel ITC's burden of litigating in Michigan is lessened by its retention of the same counsel as its American subsidiary. Further,

Michigan has a strong interest in protecting its residents from unfair competition, trade secret theft, and trademark and copyright violations, while Ford has a clear interest in litigating this case in Michigan.  Weighing these factors, the Court concludes that the exercise of personal jurisdiction is reasonable.

The Court therefore concludes—again—that (1) Autel ITC has purposefully availed itself of the privileges of acting in Michigan through its activities in Michigan; (2) Ford's claims arise from those activities; and (3) that the Court's exercise of personal jurisdiction is reasonable.  Consequently, Ford has presented a *prima facie* case that the Court has personal jurisdiction over Autel ITC.

## III.  CONCLUSION

For the reasons explained above, Autel's motion to dismiss **IS GRANTED WITHOUT PREJUDICE** as to Counts 1 and 2.  Ford is granted leave to amend the Complaint as to these counts, which shall be filed no later than by October 16, 2015.  Autel's motion to dismiss Count 8 **IS GRANTED WITH PREJUDICE**. Further, Autel's motion to dismiss Counts 3, 4, 5, 6, and 7 **IS DENIED**.

**SO ORDERED.**

Dated:  September 30, 2015                      s/Terrence G. Berg
                                               TERRENCE G. BERG
                                               UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically submitted on September 30, 2015, using the CM/ECF system, which will send notification to all parties.

                                               s/A. Chubb
                                               Case Manager