# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

FORD MOTOR COMPANY, and FORD
GLOBAL TECHNOLOGIES, L.L.C.,

        Plaintiffs,

        v.

AUTEL US INC., and AUTEL
INTELLIGENT TECHNOLOGY CO., LTD.,

        Defendants.
                                           /

Case No. 14-13760
HON. TERRENCE G. BERG

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS (DKT. 29)

Pending before the Court is Autel's[1] partial motion to dismiss, which was filed on November 20, 2015. (Dkt. 29). Autel seeks dismissal of five of the nine counts alleged in Ford's complaint. Following full briefing, the Court heard oral argument on January 27, 2016. For the reasons explained below, Autel's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

### I.    FACTUAL AND PROCEDURAL HISTORY

Ford is the maker of the Ford Integrated Diagnostic System (the "IDS"), a system that diagnoses Ford vehicles and facilitates their service and repair. (Dkt. 28, p. 8). The IDS consists of hardware and software components. (*Id.*) The hardware component includes the "Diagnostic Tools," which are made up of various vehicle modules. (*Id.*) The Diagnostic Tools connect and communicate with on-

---

[1] For purposes of this motion, the Court will refer to Defendants Autel.US, Inc. and Defendant Autel Intelligent Technology Co., Ltd., or Autel ITC, collectively as "Autel." Similarly, the Court will refer to Plaintiffs Ford Motor Company and Ford Global Technologies, L.L.C., collectively as "Ford."

board computers installed within Ford vehicles. (*Id.*) The Diagnostic Tools transmit information from the vehicles to the software component of the IDS, which then diagnoses the problem and recommends repairs. (*Id.*)

Ford possesses copyrights on files within the IDS, including the "CALID_VIDQUID_REC" file (the "Calid" file) and the "MNEMONICS_ENG" file ("Mnemonics" file). (*Id.* at 9). The Calid file is a data compilation. (*Id.*) Ford alleges that Autel's competing diagnostic tool, the MaxiDAS DS708 (the "MaxiDAS"), "includes an unlawfully obtained copy" of the Calid file. (*Id.*) Ford claims that Autel's MaxiDAS contains certain data entries that were created by Ford as "test" or "dummy" data entries within the Calid file (*id.*) and that a detailed analysis of Autel's "autel_01.tab" file (within the MaxiDAS) reveals that over 35,000 data entries found in "autel_01.tab" are arranged in the same sequence and arrangement as they exist in Ford's copyrighted Calid file. (*Id.* at pp. 14-22).

Ford also claims that Autel has "copied all or a substantial portion" of the text of Ford's Mnemonics file within Autel's "en_text.tab" file, also found within the MaxiDAS. (*Id.* at pp. 30-31). This includes copying the same file structure and text contained within the file. (*Id.*)

The IDS's software includes numerous data compilations. (*Id.* at p. 9). One compilation within the IDS is the "FFData" file, a file that Ford alleges contains trade secrets. (*Id.*) Ford avers that it protects its trade secrets by using encryption and obfuscation technology. (*Id.*) Ford complains that Autel has created or used a program called "PARSEALL.EXE" to access Ford's FFData file without

2

authorization. (*Id.* at p. 36). According to Ford, Autel has also used the PARSEALL.EXE program to extract Ford's IDS software and copy data into its products. (*Id.* at p. 37).

Ford also contends that Autel has improperly obtained access to the IDS in other ways. Ford makes the IDS available to certain vehicle repairers subject to the terms of an End User License Agreement ("EULA"). (Dkt. 28, Ex. J). The EULA defines eligible end users of the IDS as:

> [A] repairer engaged in the direct repair of the vehicle. An End-User cannot be a diagnostic toolmaker.

(*Id.*). Despite this prohibition, Ford claims that "Autel, as a diagnostic toolmaker, violated the terms of the EULA by installing and using Ford's IDS Software." (Dkt. 28, p. 51).

In addition, Ford alleges that Autel has used its trademarks to produce counterfeit products and has diluted Ford's marks by using them in its products without authorization. Ford claims that Autel "uses the FORD OVAL® trademark on its products, Internet website, and advertising materials without authorization or a license from Ford." (*Id.* at 33).

On September 29, 2014, Ford filed suit against Autel. (Dkt. 1). On September 30, 2015, the Court issued an order granting in part and denying in part Autel's motion to dismiss. (Dkt. 24). The Court also granted Ford leave to amend its complaint. On November 3, 2015, Ford filed a second amended complaint, containing nine counts. (Dkt. 28). On November 20, 2015, Autel filed a partial

motion to dismiss. (Dkt. 29). Following full briefing, the Court heard oral argument on January 27, 2016.

## II. ANALYSIS

### A. Standard of Review

A Rule 12(b)(6) motion tests whether a legally sufficient claim has been pleaded in a complaint, and provides for dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556). When assessing whether a plaintiff has set forth a "plausible" claim, the district court must accept all of the complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). A plaintiff must provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 556. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

B. Discussion

In its partial motion to dismiss, Autel seeks dismissal of five counts, including: (1) Count One, for copyright infringement; (2) Count Two, for circumvention of a copyright under the Digital Millennium Copyright Act ("DMCA"); (3) Count Three, in part for counterfeiting; (4) Count Eight, for breach of contract; and (5) Count Nine, for trademark dilution. (Dkt. 29). The Court will address each count in turn.

**1. Ford has stated a claim for copyright infringement**

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'n Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).

"The first prong tests the originality and non-functionality of the work . . . both of which are presumptively established by the copyright registration." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004). Ford has provided copyright registrations for both the Calid file and the Mnemonics file. (Dkt. 28, Exs. E and M). Ford has therefore adequately stated a proper claim under the first prong of copyright infringement.

The second prong requires that Ford plead that Autel has copied the constituent elements of the work that are original. For data compilations like the Calid file, only the "selection, coordination, and arrangement of facts" are original and copyrightable; the underlying facts may be "freely copied." *Feist*, 499 U.S. at 359. In its prior order, the Court held that Ford had failed to meet this prong

5

because Ford's first complaint only claimed that "Autel duplicated Ford's FFData file, and that this file contains some of Ford's copyrighted data compilation," leaving it unclear whether Autel copied the original elements of the work.

Ford has rectified this problem in its Second Amended Complaint. Ford alleges that Autel has copied the exact selection and arrangement of the Calid file because it claims that Autel's competing tool, the MaxiDAS, includes an "unlawfully obtained copy" of the Calid file. (Dkt. 28, p. 9). Ford claims that this copy is contained within Autel's "autel_01.tab" file. (*Id.*) Ford further alleges that a detailed analysis of Autel's file reveals that over 35,000 data entries are compiled in the *same sequence and arrangement* as Ford's Calid file. (*Id.* at pp. 14-22). The same is true for Ford's Mnemonics file. Ford alleges that Autel has copied "all or a substantial portion" of the text of the Mnemonics file, including the file's structure. (*Id.* at pp. 30-31.) The Court finds that Ford has plead sufficient facts to establish the second prong of copyright infringement.

In its prior order, the Court noted that to plead copyright infringement, a party must show plausible grounds for infringement by pleading "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of copyright infringement. (*See* Dkt. 24, p. 7) (citing *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.*, 299 F. App'x 509 (6th Cir.2008)). In *National Business*, the Sixth Circuit found that the plaintiff had failed to plead sufficient facts to claim copyright infringement where the plaintiff failed to identify specific works or actions by the defendants that infringed on the plaintiff's copyright. 299 F. App'x at 511.

Here, Ford has identified specific products and actions that infringe on its copyrights. Ford claims that Autel's MaxiDAS product contains an unlawfully obtained copy of the Calid file. (Dkt. 28, p. 9). More specifically, it claims that the copy is contained in Autel's "autel_01.tab" file. (*Id.*) Ford also alleges that the MaxiDAS contains a copy of "all or a substantial portion" of its Mnemonics file, within Autel's "en_text.tab" file. (*Id.* at pp. 30-31). Ford need not *prove* its copyright infringement claims in its complaint. Ford has alleged facts in the Second Amended Complaint that sufficiently plead copyright infringement as to both the Calid file and the Mnemonics file. Accordingly, Autel's motion to dismiss Count One is **DENIED**.

### 2. Ford has failed to state a claim under the DMCA

In Count Two, Ford claims that Autel has violated the DMCA, codified at 17 U.S.C. § 1201 *et seq*. Although not specified in the Second Amended Complaint, Ford appears to claim that Autel has violated §§ 1201(a)(1)-(2). Section 1201(a)(1)(A) states that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title." This section prohibits the circumvention of technology measures that control access to copyrighted work. Section 1201(a)(2) prohibits the manufacture or sale of technology or products primarily designed to circumvent a technological measure that controls access to copyrighted work.[2]

---

[2] Section 1201(a)(2) provides that "[n]o person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that—

Ford has failed to plead a claim under either of these provisions. Ford claims that the IDS contains various data compilations, including the FFData file. (Dkt. 28, p. 8). It alleges that the FFData file consists of trade secrets, and that it protects its trade secrets through encryption and obfuscation technology. (*Id.* at p. 9). Ford further contends that Autel developed or used the PARSEALL.EXE program to circumvent its technological security measures and access the FFData file as well as other data from the IDS. (*Id.* at pp. 36-37).

This is insufficient to state a claim because Ford does not allege that the FFData file is copyrighted. Nor does Ford allege that its copyrights, including the Calid file or the Mnemonics file, are contained within the FFData file.[3] Therefore, while Ford has alleged that Autel circumvented its technological security measures to improperly access its trade secrets in the form of the FFData file, it has not

---

        (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title;

        (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or

        (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.

[3] At oral argument, Ford's counsel was unable to identify any allegation in the complaint that the Calid file resides within the FFData file. The Court has carefully reviewed the Second Amended Complaint and has not found this allegation contained therein.

alleged that Autel circumvented its security measures to access a copyrighted work.[4]  Autel's motion to dismiss Count Two is **GRANTED**.

### 3. Ford has stated a claim for counterfeiting

Autel also seeks dismissal of Ford's counterfeiting claim under Count Three, a count which encompasses both trademark infringement and counterfeiting claims.

"To recover on a federal trademark counterfeiting claim, a plaintiff must show that:  (1) the defendant infringed a registered trademark in violation of 15 U.S.C. § 1114; and (2) the defendant intentionally used the mark knowing it was a counterfeit as the term counterfeit is defined in 15 U.S.C. § 1116." *Laukus v. Rio Brands, Inc.*, 391 F. App'x 416, 425 (6th Cir. 2010).  Section 1116 defines a counterfeit mark as "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered."  (*Id.*) (citing 15 U.S.C. § 1116).

> The words "for such goods and services sold" have been interpreted to
>> require that the accused goods or services must be the same as those for which the plaintiff's mark is registered.  While the identity of goods and services requirement is clear and explicit in the criminal counterfeiting statute, it is not so clear in the civil statute.  But the meaning is the same.  Congress intended that, for the purpose of obtaining an ex parte seizure order, a "counterfeit mark" must be used on the same goods or services as those for which the plaintiff's mark is federally registered.

---

[4] For the same reason, Ford's allegation that Autel obtained data from IDS is insufficient to plead a DMCA claim as there is no allegation that this data was copyrighted.

McCarthy on Trademarks and Unfair Competition § 25:15 (4th ed.). Relying on this authority, Autel claims that Ford's counterfeiting claim must fail because Ford has "not alleged that it owns a federal registration for computer hardware/software in connection with automotive diagnostic products."

Ford has identified three separate trademark registrations, including:

- Reg. No. 3,657,597 for automobile repair and maintenance services
- Reg. No. 3,046,211 for vehicle repair and maintenance services; emergency roadside services
- Reg. No. 2,034,370 for sun glasses, tire pressure gauges, magnets, tape measures . . .

(Dkt. 28, p. 7). Two of the registrations explicitly relate to automobile repair and maintenance. Ford has plead that Autel is improperly using a counterfeit trademark in providing the same goods and services—in this case, automobile repair and maintenance products.

And to the extent that Autel is arguing that the registration must be for the exact same good, the Court notes that "[w]hile the identity of goods and services requirement is clear and explicit in the criminal counterfeiting statute, it is not so clear in the civil statute." McCarthy on Trademarks and Unfair Competition § 25:15. Accordingly, Autel's motion to dismiss Count Three in part is **DENIED**.

### 4. Ford has stated a claim for breach of contract

Count Eight charges Autel with breach of contract for downloading Ford's IDS despite the EULA's express limitation that "[a]n End-User cannot be a diagnostic toolmaker." (Dkt. 28, Ex. J). Autel argues that because it is a diagnostic toolmaker, it is not an "End-User" and therefore the EULA is inapplicable as a matter of law.

This argument is not well-taken. The EULA's language prohibits diagnostic toolmakers from downloading the IDS in the first place. In other words, it closes the IDS's doors to diagnostic toolmakers, it does not, as Autel's argument would suggest, offer competing diagnostic toolmakers free reign to access the IDS. Autel's motion to dismiss Count Eight is **DENIED**.

### 5. Ford has stated a claim of trademark dilution

Lastly, Autel seeks dismissal of Count Nine, which alleges trademark dilution. Trademark dilution is distinct from trademark infringement. *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786 (6th Cir. 2004). "Courts recognize two principal forms of dilution: tarnishing and blurring . . . Dilution by blurring . . . occurs when consumers see the plaintiff's mark used on a plethora of different goods and services . . . raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *Id.* at 801 (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 466 (7th Cir. 2000)). Trademark dilution targets "a proliferation of borrowings, that while not degrading the original seller's mark, are

so numerous as to deprive the mark of its distinctiveness and hence impact." *Id.* (internal citation omitted).

Autel argues that Ford has failed to plead a trademark dilution claim because it has not sufficiently claimed that Autel's use of Ford's logo and mark creates a blurring or tarnishing effect on Ford's trademarks. Autel bases its argument on the fact that it uses Ford's marks alongside the marks of other carmakers.

The Court disagrees. Ford claims that Autel is using its trademarks in its MaxiDAS product and on Autel's website (Dkt. 28, pp. 33-35) and that Autel sells its products to the general public "throughout the United States." (*Id.* at p. 3). That Autel uses Ford's marks alongside those of others does not in and of itself negate the possibility of trademark dilution. Ford has adequately plead dilution because Autel's use of Ford's trademarks in its products could lead repairers to believe incorrectly that Ford's authorized software was contained in the MaxiDAS, thus blurring the mark's effectiveness as a unique identifier of Ford-manufactured products. Or, should the MaxiDAS fail to function properly in connecting to a Ford vehicle, a repairer seeing the Ford logo on the device might understandably assume that Ford was associated with the failure, thus tarnishing the mark by associating it with a lack of performance that should not be attributed to Ford. Therefore, Autel's motion to dismiss Count Nine is **DENIED**.

### III. CONCLUSION

For the reasons explained above, Autel's motion to dismiss is **GRANTED** as to Count Two and **DENIED** as to Counts One, Three, Eight and Nine.

**SO ORDERED.**


Dated: July 1, 2016                     s/Terrence G. Berg
                                        TERRENCE G. BERG
                                        UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically submitted on July 1, 2016, using the CM/ECF system, which will send notification to all parties.

                                        s/A. Chubb
                                        Case Manager