**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| FORD MOTOR COMPANY, a Delaware corporation, and FORD GLOBAL TECHNOLOGIES, LLC, Delaware Limited Liability Company,<br><br>  Plaintiffs and<br>  Counterclaim Defendants,<br><br>    v.<br><br>AUTEL US INC, a New York corporation, and AUTEL INTELLIGENT TECHNOLOGY CO., LTD, a Chinese corporation,<br><br>  Defendants and<br>  Counter Claimants,<br><br>    v.<br><br>LAUNCH TECH CO. LTD, a Chinese corporation,<br>INNOVA ELECTRONICS, CORP., a California corporation, and IEON CHEN, an individual,<br><br>  Counterclaim Defendants. | Case No. 14-13760<br>Hon. Terrence G. Berg |

**OPINION AND ORDER GRANTING IEON CHENS' AND LAUNCH TECH
CO. LTD'S MOTIONS TO DISMISS FOR LACK OF PERSONAL
JURISDICTION (DKTS. 57 and 65)**

**I. INTRODUCTION**

  In this this action alleging trade secret misappropriation and trademark and copyright infringement, Ford claims that Autel obtained access to Ford's proprietary automobile-diagnostic software, hacked it, copied proprietary information, and

pasted that information into Autel's own diagnostic software.[1] Autel denies the allegations, and contends in response that Counterclaim Defendants Launch Tech Co. Ltd,[2] Innova Electronics, and Ieon Chen teamed up with Ford to craft and spread Ford's allegations to damage Autel's position in the marketplace—in essence to take out the competition. Third Party Defendants Chen and Launch have moved to dismiss the case against them on the ground that the Court lacks personal jurisdiction over them. Because Autel has failed to present a *prima facie* case that the Court has personal jurisdiction over Chen and Launch, Chen's and Launch's motions are **GRANTED** and Autel's claims against them are **DISMISSED WITHOUT PREJUDICE**.

**II. BACKGROUND**

Chen is the CEO of Innova, a Nevada corporation. Dkt. 57, Pg. ID 1595. He lives in California. Dkt. 57, Pg. ID 1595. He does no business in Michigan and has not entered into any contracts here. Dkt. 57, Pg. ID 1595. Twice, in connection with this matter, Chen affirmatively contacted a Michigan resident by email. On August 23, 2013, Chen emailed Colin Fielding at Bosch Automotive. Dkt. 57, Pg. ID 1595. And on October 3, 2013, Chen emailed Ken Dornoy of Ford. Dkt. 57, Pg. ID 1596. Both emails concerned information Innova had obtained relating to Ford's diagnostic

---

[1] Throughout this Order, the Court refers to both Ford entities as "Ford" and to both Autel entities as "Autel."
[2] Originally Autel sued two "Launch" entities: Launch Tech Co. Ltd. (a Chinese corporation) and Launch Tech, Inc. (a California corporation). Autel then dismissed Launch Tech, Inc., so only Launch Tech Co. Ltd. remains a party. Throughout this Order, the Court refers to "Launch Tech Co. Ltd." as simply "Launch."

software and Autel's diagnostic software. These emails set off a series of communications between Chen and Ford's lawyers, who are located in Utah. Dkt. 57, Pg. ID 1597.

Launch is a Chinese corporation headquartered in Shenzhen, China. Dkt. 65, Pg. ID 1838. It manufactures automotive diagnostic tools and sells them throughout the world using third-party distributors. Dkt. 65, Pg. ID 1838. In the United States, Launch sells to two third-party distributors, Matco Tools and Launch Tech, Inc. Dkt. 65, Pg. ID 1838. Launch Tech, Inc. is a California corporation. Launch Tech, Inc. is not a subsidiary of Launch; their relationship is that of customer and vendor. Dkt. 65, Pg. ID 1839. Launch does no business in Michigan. Dkt. 65, Pg. ID 1839. It has neither offices nor employees here, owns no property here, has no bank accounts here, and neither ships nor sells here. Dkt. 65, Pg. ID 1839.

Autel alleges that Launch asked Chen to establish an ongoing relationship with Ford and that Launch supplied information to Chen that Chen then relayed to Ford. Dkt. 38, Pg. ID 814. Autel further alleges that the information Launch supplied included a false claim: that Autel used a program called PARSEALL.EXE to hack Ford's diagnostic software. Dkt. 38, Pg. IDs 814-815. And Autel alleges that Launch, Chen, and Ford knew or should have known that the PARSEALL.EXE hacking claim was false. Dkt. 38, Pg. ID 815.

Chen and Launch filed their motions to dismiss in September of 2016. Dkts. 57, 65. Autel opposed both motions. Dkts. 69, 75. Following full briefing, the Court held oral argument on November 30, 2016.

### III. ANALYSIS

Chen and Launch argue that this Court lacks both general and specific jurisdiction over them. Dkt. 57, Pg IDs 1601-1615; Dkt. 65, Pg. IDs 1844-1849. Autel concedes that this Court lacks general jurisdiction, but maintains that it has specific jurisdiction over them. Dkts. 69, 75.

**A. Standard of Review.**

A federal court's exercise of jurisdiction over litigants must be both "(1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002). Michigan's long-arm statute, Mich. Comp. Laws §§ 600.715 (corporations) and 600.705 (individuals), governs issues of personal jurisdiction and gives the "maximum scope of personal jurisdiction permitted by the due process clause of the Fourteenth Amendment." *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1236 (6th Cir. 1981). Accordingly, if jurisdiction is proper under the Fourteenth Amendment, it is also proper under Michigan's long-arm statute.

Due process is satisfied if a defendant has "sufficient minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). "But the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). For the

4

Court to find that it has specific personal jurisdiction over Chen and Launch, three factors must be met: (1) the defendant must "purposefully avail himself [or itself] of the privilege of acting in the forum state;" (2) "the cause of action must arise from the defendant's activities there;" and (3) "the acts of the defendant ... must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

### B. Analysis

As counterclaimant, Autel bears the burden of establishing the Court's personal jurisdiction over Chen and Launch. *Neogen Corp.*, 282 F.3d at 883. Because the Court has not held an evidentiary hearing on this issue, Autel need only present a *prima facie* case for jurisdiction. *Audi AG v. Volkswagon of Am., Inc.*, 341 F. Supp. 2d 734, 741 (E.D. Mich. 2004). Autel can meet this burden by "establishing with reasonable particularity sufficient contacts between [the Third-Party Defendants] and the forum state to support jurisdiction." *Neogen* 282 F.3d at 887. Thus, the Court must consider all affidavits and pleadings in a light most favorable to Autel. *Audi AG*, 341 F. Supp. 2d at 741. Even under this favorable standard of review, Autel has not met its burden.

### 1. Autel has not made a *prima facie* showing that Chen has purposefully availed himself of the privilege of acting in Michigan

Purposeful availment, the "constitutional touchstone" of personal jurisdiction, exists where the defendant's contacts with the forum state "proximately result from

5

actions by the defendant *himself* that create a 'substantial connection' with the forum state," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, (1985) (emphasis in original), and are such that he "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980). This requirement ensures that a defendant will not be subject to the jurisdiction of a forum solely as a result of "random, fortuitous, or attenuated contacts." *Burger King Corp.*, 471 U.S. at 475.

Chen argues that he has not purposefully availed himself of the privilege of acting in Michigan. Dkt. 57, Pg. IDs 1603-1611. Chen submits that he has never personally sold anything in Michigan and has never entered into any agreement with a Michigan resident, Dkt. 57, Pg. ID 1604, and that Autel's counterclaims reference neither the two communications he affirmatively sent to Michigan nor any statements within those communications. Dkt. 57, Pg. ID 1605.

Chen likens this case to the Sixth Circuit's decision in *Rice v. Karsch*, where the Sixth Circuit affirmed a district court's order dismissing a defendant for lack of personal jurisdiction in part because the only reason that the defendant's communications went to the forum state was because the corporation that received the communications was located in the forum state. 154 F. App'x 454, 462—63 (6th Cir. 2005). Chen argues that he did nothing to further his personal business in Michigan or to create continuous and substantial connections in Michigan, and that his email communication with Bosch US and Ford caused consequences in this forum

6

solely because those companies chose to have offices in Michigan. Dkt. 57, Pg. ID 1607.

In response, Autel argues that Chen's contact with Ford was the event that precipitated a series of continuous and systematic contact between the two. Dkt. 69, Pg. ID 1889. Autel also points to one of Ford's interrogatory responses, where Ford states that it was Chen who reported that Autel hacked Ford's software by using a program called PARSEALL.EXE. This one statement by Chen, Autel asserts, should itself be sufficient to meet the purposeful availment test. Dkt. 69, Pg. ID 1888. Moreover, Autel suggests that Chen sought to establish an ongoing relationship with Ford, conduct which would also constitute purposeful availment. Dkt. 69, Pg. ID 1889.

Autel's arguments are unavailing. Despite a flurry of emails between Ford's lawyers and Chen, Chen initiated communication with parties in Michigan only twice. And nothing about those two emails shows an intention to further his connections *in Michigan* or to take advantage of privileges available to those who act *in Michigan*. Chen's communications were directed to employees of Bosch US and Ford because his subject matter pertained to those companies. The only reason those communications arrived in Michigan is because the employees to whom Chen sent his emails were employed in Michigan. Bosch is headquartered in Germany, with its U.S. subsidiary headquartered in Michigan. And Ford is headquartered in Michigan, but operates in every continent except Antarctica. An employee in another state—perhaps even in another country—could have opened Chen's emails. What tied Chen's communications to Michigan was the decision by each company to locate some of its

7

offices here and to dedicate portions of its Michigan office space to employees whose responsibilities included the subject of Chen's emails: Ford's diagnostic software. This connection is attenuated, random, and fortuitous; it depends on the office-location decisions of two corporations whose operations span the globe.

The weakness of Chen's connection to Michigan is further demonstrated by the content of his two messages. Chen did not solicit business from Bosch or Ford in Michigan, nor did he sell goods or services to them; he simply passed along information about Ford's and Autel's diagnostic software. Once Ford received the information, Ford's attorneys reached out to Chen and commenced what became an ongoing dialogue. Understandably, Ford had questions. Unlike traditional cases where a defendant is found to have purposefully availed himself through targeting his communications and conduct toward the forum state, Chen's contact with the forum state was not motivated by a desire to affect this forum. Chen's purpose was to alert Ford to a problem and assist in solving it, not to engage in activities in Michigan or to have an impact here. Such conduct, alone, does not create a connection to the forum state so substantial that Chen would reasonably anticipate being haled into court here. The record does not support a finding of purposeful availment.

### 2. Autel has not made a *prima facie* showing that Launch has purposefully availed itself of the privilege of acting in Michigan

Launch's contacts with this forum are even less substantial than Chen's. Launch also argues that it has not purposefully availed itself of the privileges of acting in Michigan. Dkt. 65, Pg. ID 1846. According to the third-party claims, Autel merely

alleges that Launch contacted Chen, not Ford, Dkt. 65, Pg. ID 1847, and that Ford later asked Launch to provide additional information to Ford but Launch declined to do so. Dkt. 65, Pg. ID 1847. Launch also argues that Autel's blanket allegation that "the Counterclaim Defendants" made false statements in Michigan fails to distinguish between the actions of each counterclaim defendant and does nothing to demonstrate purposeful availment by Launch itself. Dkt. 65, Pg. IDs 1847-1848.

Autel responds that emails and other documents obtained in discovery and Ford's interrogatory responses demonstrate that Launch asked Chen to establish an ongoing relationship with Ford and that Launch supplied information to Chen that Chen then relayed to Ford. Dkt. 75, Pg. IDs 2450-2451. Accordingly, Autel argues, what matters is that Launch intended the information it gave to Chen to be delivered into Ford's hands. Dkt. 75, Pg. ID 2452.

These responses fail to demonstrate purposeful availment. As previously explained, a communication that simply conveys information and is made generally to a multi-national corporation does not create a substantial enough connection to a particular forum to demonstrate purposeful availment of that forum's jurisdiction. This is particularly so when the reason for the communication is not to develop a commercial relationship but rather to warn that corporation of what is believed to be an ongoing wrong perpetrated by another party. Launch's connection to Michigan is even more attenuated than Chen's; it initiated no direct contact with Ford and even refused to assist Ford when Ford asked for more information. Launch's actions did

9

not create a connection to Michigan so substantial that Launch should have reasonably anticipated being haled into court here.

Because the Court concludes that Chen's and Launch's conduct does not constitute purposeful availment, the Court lacks personal jurisdiction and their motions to dismiss must be granted. There is no need to discuss the other factors of the *Southern Machine* test, nor to consider Launch's arguments on insufficient service of process and failure to state a claim.

*   *   *

From a review of this record, it appears to the Court that Chen and Launch were acting as whistleblowers. They alerted Ford to what they considered blatant copying of Ford's diagnostic software. After its own investigation, Ford brought an action against Autel on a number of theories, including trade secret misappropriation and trademark and copyright infringement. This lawsuit will test the merits of those claims. By trying to expand this case to include these third-party defendants, however, Autel seeks to penalize them for blowing the whistle—roping Chen and Launch into Ford's lawsuit against Autel on the theory that their sharing of information with Ford is proof of a purposeful effort to avail themselves of the jurisdiction where Ford is headquartered. To hold that out-of-state entities evoke the jurisdiction of this forum by alerting victims in the forum to alleged wrongdoings of other parties, indeed to allow the alleged wrongdoers to hale the whistleblowers into a far-away court to be sued—effectively punished—for reporting the misconduct,

10

would be both unreasonable and against public policy. Autel may or may not have valid claims against Chen and Launch for what they did, but it must bring those claims before a court with proper *in personam* jurisdiction over them.

## IV. CONCLUSION

For the foregoing reasons, Third Party Defendant Ieon Chen's and Third Party Defendant Launch's motions to dismiss (Dkts. 57 and 65) are **GRANTED**. Autel's claims against Chen and Launch are therefore **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED.**

Dated: February 13, 2017             s/Terrence G. Berg
                                                           TERRENCE G. BERG
                                                           UNITED STATES DISTRICT JUDGE

**Certificate of Service**

I hereby certify that this Order was electronically submitted on February 13, 2017, using the CM/ECF system, which will send notification to all parties.

                                                           s/A. Chubb
                                                           Case Manager